## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VENECE TUGGLE | : | |
| **Plaintiff** | : | |
| v. | : | **NO.:** |
| | : | **CIVIL ACTION** |
| GEICO ADVANTAGE INSURANCE | : | |
| COMPANY | : | |
| **Defendant** | : | **PLAINTIFF DEMANDS TRIAL** |
| | : | **BY JURY** |
| | : | |

## CIVIL ACTION COMPLAINT

Plaintiff, **VENECE TUGGLE**, by and through her attorneys, **ACD LAW FIRM, LLC**, aver as follows upon causes of action set froth below:

### PARTIES

1.      Plaintiff, **VENECE TUGGLE,** is an adult individual who at all times relevant hereto, resided at 1416 PINE STREET. NORRISTOWN, PA and now resides at 3109 SHIRLENE ROAD, NORRISTOWN, PA 19403.

2.      Defendant, **GEICO ADVANTAGE INSURANCE COMPANY ("GEICO")**, is a corporation or other business entity engaged in the insurance business, which operates in the Commonwealth of Pennsylvania, and at all times relevant to this cause of action was authorized and did sell liability insurance policies throughout the Commonwealth of Pennsylvania.

3.      Defendant maintains a corporate headquarters at 1 GEICO Blvd, Fredericksburg, VA 22412.

## JURISDICTION AND VENUE

4.      There is diversity of citizenship as the Plaintiff is a citizen of Pennsylvania and the Defendant is an insurance company which operates in the Commonwealth of Pennsylvania, and at all times relevant to this cause of action, was authorized and did sell liability insurance policies throughout the Commonwealth of Pennsylvania.  The amount in controversy exceeds Seventy-Five Thousand ($75,000.00) Dollars.

5.      Plaintiff demands trial by jury pursuant to Fed. R.C.P. 39(b).  This Court has venue over this matter because the cause of action arose in this judicial district.

6.      The Defendant operates its business throughout the Commonwealth of Pennsylvania and a substantial part of the events giving rise to the claims alleged herein occurred in this judicial district.  28 U.S.C. §1391.

7.      This Court has pendant jurisdiction and supplemental jurisdiction over the related state claims in this matter.

## FACTS

8.      Prior to May 18, 2022, the Defendant, **GEICO,** issued a policy of automobile liability insurance to Plaintiff, **VENECE TUGGLE.**  Said policy was numbered 4601944392 and was effective on all dates hereinafter mentioned. See true and correct copy of insurance policy attached as Exhibit "A".

9.      The aforesaid policy of automobile liability insurance provided for payment of underinsured motorist benefits in accordance with the provisions of the Pennsylvania Motor Vehicle Financial Responsibility Law.

10.     On or about May 18, 2022, the aforesaid policy of automobile liability insurance, including the provisions for payment of underinsured motorist benefits, was in full force and effect.

11.     On or about May 18, 2022, a vehicle owned and operated by the tortfeasors were traveling in the parking lanes of a parking lot when it was so carelessly, recklessly, and negligently operated and controlled that they crashed into Plaintiff's vehicle, which was lawfully traveling in the fire lane of said parking lot.

12.     By reason of the aforesaid culpable conduct of the tortfeasors as hereinbefore alleged, the Plaintiff, **VENECE TUGGLE**, suffered severe and permanent injuries to her neck, shoulders, back, arms, wrists, including but not limited to: L4-5, L5-S1 requiring epidural injections, and aggravation and/or exacerbation of all known and unknown prexisting medical conditions. She has in the past and will in the future undergo severe pain and suffering as a result of which she has been in the past and will in the future be unable to attend to her usual duties and occupation, all to her great financial detriment and loss. The Plaintiff, **VENECE TUGGLE**, believes and therefore avers that her injuries are permanent in nature.

13.     As a result of the aforesaid occurrence, the Plaintiff, **VENECE TUGGLE**, has been compelled, in order to effectuate a cure for the aforementioned injuries, to expend large sums of money for medicine and medical attention and may be required to expend additional sums for the same purposes in the future.

14.     As a result of the aforesaid occurrence, the Plaintiff, **VENECE TUGGLE**, has been prevented from attending to her usual and daily activities and duties, and may be so prevented for an indefinite time in the future, all to her great detriment and loss.

15.     As a result of the aforesaid occurrence, the Plaintiff, **VENECE TUGGLE**, has suffered physical pain, mental anguish, and humiliation and she may continue to suffer same for an indefinite period of time in the future.

16.     The insurance company for the tortfeasor tendered its $100,000.00 policy limits. The tortfeasor was insured by State Farm Insurance Company.

17.     Defendant, **GEICO**, as the insurer of **VENECE TUGGLE** gave its consent to settle with the tortfeasor.

18.     At all times relevant hereto, Plaintiff advised Defendant, **GEICO**, that she were resolving the underlying suit with the tortfeasor and thus, intending to make a claim for UIM benefits.

19.     On or before October 16, 2025, Defendant, **GEICO**, acknowledged that Plaintiff was pursuing an underinsured motorist claim.

20.     Upon information and belief, the **GEICO** insurance policy applicable to this loss does not contain an arbitration clause regarding the UIM claim. As such, this litigation was commenced to seek recovery of underinsured motorist benefits under the GEICO policy of insurance.

21.     As the negligent tortfeasor who caused the severe and permanent injuries sustained by Plaintiff, **VENECE TUGGLE**, was underinsured, Plaintiff, **VENECE TUGGLE**, request and are entitled to recovery of the limits of their UIM coverage through the Defendant, GEICO.

22.     At all times relevant hereto, Defendant, **GEICO**, engaged in the insurance business for profit.

23.     At all times relevant hereto, Defendant, **GEICO**, was engaged in the business

of selling insurance and insurance policies in the Commonwealth of Pennsylvania, and specifically, did sell the said policy of liability insurance covering Plaintiffs.

24.    The premium requested by the Defendant, **GEICO**, as payment for said policy of said insurance policy had, prior to March 6, 2016, been paid in full.

25.    As the insurer of Plaintiff, Defendant, **GEICO**, has a fiduciary, contractual and statutory duty towards Plaintiffs with respect to the payment of underinsured motorist benefits.

26.    As the insurer of Plaintiff, Defendant, **GEICO**, has a fiduciary, contractual and statutory duty towards Plaintiffs to negotiate their claim in good faith in order to arrive at a prompt, fair, and equitable settlement.

27.    Due to the documented injuries suffered by **VENECE TUGGLE** which injuries are reported to be permanent, the value of her claim was in excess of the combined policy limits of both the third-party insurance carrier and the policy limits of Defendant, GEICO.

28.    Despite this, **GEICO**'s refused to negotiate in good faith and instead, in essence, denied the claim, stating that their valuation of the claim was at or less than the amount already received.

29.    **GEICO** also provided a declaration page in which the $25,000 coverage was stated to be "non-stacking" but failed to provide the stacking waiver. This was bad faith.

30.    To date, **GEICO** has paid no UIM benefits at all to its insured **VENECE TUGGLE**.

31.    **GEICO** states that its good faith evaluation of the case value is at third-party credit, meaning that it believes a factfinder would value the case at no more than $100,000 total. Said another way, **GEICO** wants to pay nothing to its insured.

**COUNT I**

**VENECE TUGGLE v. GEICO COMPANY**
**BREACH OF CONTRACT (UIM)**

32.     Plaintiffs hereby incorporate by reference the preceding paragraphs of this Complaint as though fully set forth herein at length.

33.     The said policy of insurance as herein above alleged constituted a valid contract between Plaintiffs as insureds and Defendant, **GEICO**.

34.     The involved insurance contract imposed upon the Defendant, GEICO, and its agents, servants, and employees acting within the course and scope of their employment with **GEICO**, a duty to use good faith and apply fair dealing towards the Plaintiffs/Insureds in handling claims.

35.     Plaintiffs herein at all times relevant to this cause of action fully and completely cooperated with the Defendant herein and fulfilled all of their obligations under the policy of insurance at issue which was in full force and effect at all times relevant to the underlying action.

36.     Pursuant to the terms of the contract, Defendant is obligated to pay Plaintiffs the policy proceeds, including the policy limits for which Plaintiffs paid premiums.

37.     By failing to pay underinsured motorist benefits and by failing to offer indemnification to Plaintiffs for losses after accepting the premiums paid and by further failing to negotiate with Plaintiffs and/or their authorized representatives in good faith, Defendant, **GEICO**, has breached its fiduciary, contractual, and statutory obligation to Plaintiffs.

38.     As a result of Defendant's breach of its fiduciary, contractual and statutory obligations to Plaintiffs as set forth above, Plaintiffs were forced to litigate claims against

Defendant, forced to incur costs and attorneys' fees, and forced to suffer other damages in an exact amount yet to be determined.

**WHEREFORE**, Plaintiffs demand judgment against Defendant, **GEICO**, in an amount in excess of Fifty Thousand Dollars ($50,000.00), plus interest, costs, expenses, and such other relief as this Court deems just and proper.

### COUNT II

### VENECE TUGGLE v. GEICO
### 42 Pa.C.S.A. §8371 - STATUTORY BAD FAITH

39.     Plaintiff hereby incorporates by reference paragraphs 1 through 38 of this Complaint as though fully set forth herein at length.

40.     Defendant, **GEICO COMPANY**, has violated its fiduciary, contractual and/or statutory duties of good faith and fair dealing by acting in bad faith towards Plaintiff in violation of the policy's implied covenant of good faith and fair dealing, and in specific violation of 42 Pa.C.S.A. §8371.

41.     Plaintiff herein alleged that the acts and/or omissions of Defendant acting individually by and through their agents, servants and employees acting within the course and scope of their employment, as herein above alleged, constitutes conduct and behavior that was reckless, willful and wanton, which would entitle the Plaintiff to punitive damages under the decisional law and statutory law of the Commonwealth of Pennsylvania.

42.     The statute of the Commonwealth of Pennsylvania, known and characterized as the "Bad Faith" Statute, Act of February 7, P.L. 11 1990 No. 6 §3, (42 Pa.C.S.A. §8371 Actions On Insurance Policies, sub-chapter G. Special Damages), provides as follows:

> In an action arising under an insurance policy, if the
> court finds that the insurer has acted in bad faith

towards the insured, the court may take all of the following actions:

(1)    Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

(2)    Award punitive damages against the insurer.
(3)    Access court costs and attorney fees against the insurer.

43.    Plaintiff herein brings this action for bad faith under and by virtue of the statutes of the Commonwealth of Pennsylvania entitled "Actions on Insurance Policies," 42 Pa. C.S. §8371 *et seq*., for damages herein above alleged, with interest thereon, compensatory damages, together with punitive damages, and for assessment of court costs and attorneys fees against Defendant, **GEICO**, as insurer of Plaintiff herein.

44.    Plaintiff further brings this action against Defendant, **GEICO COMPANY**, acting by and through its agents, servants and employees of **GEICO COMPANY**, as insurers, for breach of their contractual duties of an insurer in Pennsylvania towards an insured for:

a.    failing to acknowledge and act promptly upon written and oral communications with respect to claims arising under the insurance policy;

b.    failing to adopt and implement reasonable standards for the prompt investigation of claims arising under the insurance policy;

c.    refusing to pay claim without conducting a reasonable investigation based upon all available information;

d.    failing to affirm or deny coverage of claims withing a reasonable time after proof of loss statements had been completed and communicated to the company or its representatives;

e.    not attempting in good faith to effectuate prompt, fair and equitable settlement of claims in which Defendants liability under the policy has become reasonably clear;

f.    compelling persons to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts due and ultimately recovered in actions brought by such persons;

g.    failing in its duties to its insured in violation of its policy of insurance and under the laws of Pennsylvania;

h.    failing to fulfill its fiduciary duty to Plaintiff;

i.    failing to afford the interest of its insured (the Plaintiff) the same faithful consideration it gives its own interest;

j.    taking the unreasonable position with respect to contractual rights of the policyholder and acting unreasonably to avoid paying a reasonable sum for Plaintiff's claims; and

k.    deliberately and intentionally hiring paid defense doctors who act on behalf of insurance companies whose reports are biased, self-serving and disingenuous.

45.    As the insurer of Plaintiff, Defendant owes a fiduciary, contractual and statutory duty to Plaintiff to negotiate her claim in good faith to arrive at a prompt, fair and equitable settlement.

46.    Nevertheless, Defendant knowingly and recklessly acted without legal justification or cause when failing to negotiate in good faith and/or to pay Plaintiff a sum to which Plaintiff was entitled.

47.    At all times relevant hereto, Defendant, **GEICO**, with a dishonest purpose, knowingly breached a known duty (i.e. to act in good faith and fair dealing) as it was motivated by self-interest.

48.     As a result of the above described conduct,  Plaintiff was forced to litigate claims against Defendant, forced to incur costs and attorneys fees, and forced to suffer other damages in an exact amount yet to be determined and for which she is entitled to compensatory, consequential and punitive damages and attorneys fees, including but not limited to those damages provided by 42 Pa. C.S.A. Section 8371.

**WHEREFORE**, Plaintiff demands judgement against Defendant, **GEICO**, in an amount   in excess of $75,000.00, plus interest on the amount of the award for compensatory damages from the date of the claim made by Plaintiff in an amount equal to the prime rate of interest plus 3%, plus punitive damages, plus reasonable attorney fees, plus costs and such other relief this Court deems proper under 42 Pa. C.S.A. §8371.

## COUNT III

### VENECE TUGGLE v. GEICO COMPANY
### COMMON LAW BAD FAITH

49.     The averments of the preceding  paragraphs are incorporated herein and made a part hereof as though fully set forth herein at length.

50.     The said policy of insurance between Plaintiff and **GEICO** as hereinabove alleged constituted a contract binding on Defendant, **GEICO.**

51.     The said insurance contract imposed upon the Defendant, **GEICO** and upon its agents, servants and employees acting within the course and scope of their employment with **GEICO**, an agreement and a duty upon the said Defendant to use good faith and apply fair dealing towards the Plaintiff/insured in handling his claim.

52.     When **GEICO** issued a policy of insurance, Defendant, **GEICO,** assumed a corresponding duty and obligation to protect those insured under the contract and provide coverage when due.

53.    Plaintiff herein, at all times relevant to this cause of action, fully and completely cooperated with **GEICO** herein, and fulfilled all of his obligations under The **GEICO** Policy of insurance at issue which was in full force and effect at all times relevant to the underlying action.

54.    Refusing to pay the UIM coverage available to Plaintiff, the Defendant, **GEICO,** herein breached its  contractual obligation to Plaintiff under the said policy of insurance, by failing to act in **VENECE TUGGLE**'s interests.

56.    The Defendant, **GEICO,** herein, in the performance of the said contract, owed to Plaintiffs a fiduciary duty to act in good faith.

57.    The Defendant, **GEICO,** breached the aforesaid contract of insurance in the following manner which includes but is not limited to the following:

   (a)    failing to protect Plaintiff herein under the contract of insurance as herein above alleged which was in full force and effect at all times relevant hereto;

   (b)    failing in its duties to Plaintiff, in violation of its policy of insurance and under the laws of Pennsylvania;

   (c)    failing to fulfill its fiduciary duty to **PLAINTIFF**;

   (d)    failing to afford the interest of its insured (**PLAINTIFF** herein) the same faithful consideration it gives its own interest;

   (e)    failing to act in good faith with respect to the underinsured policy limits at issue;

   (f)    failing to perform a prompt good faith investigation as to the facts concerning this claim and the laws governing this claim;

   (g)    taking the unreasonable position with respect to contractual rights concerning The **GEICO** Policy and acting unreasonably to avoid paying for a covered loss.

   **WHEREFORE**, Plaintiff demands judgment against Defendant **GEICO** in an amount

in excess of $50,000.00, plus punitive damages, treble damages, compensatory and/or

consequential damages allowed by law, together with interests, and costs, and such other

relief as the Court deems just and proper.


**ACD LAW FIRM LLC**

Dated:    **Jan. 11, 2026**          **BY:** _____

**Adam C. Davis, Esquire**
**ID No. 207186**
**200 Eagle Road**
**Suite 250**
**Wayne, PA 19087**
**(610) 975-4560**

# Exhibit A

# GEICO

5260 Western Avenue
Chevy Chase, MD 20815

CERTIFIED DOCUMENTS

The undersigned certifies the attached documents as true and accurate, reflecting the contents maintained in GEICO's records with respect to the policy.

Policy number: 4601944392

Signature: _Jennifer Flowers_____    Date:    10/13/2025



**Tel:** 1-800-MILITARY
1-800-645-4827

# Declarations Page

This is a description of your coverage.
Please retain for your records.

**GEICO Advantage Insurance Company**
One GEICO Boulevard
Fredericksburg, VA 22412-0003

## Policy Number: 4601-94-43-92
## Coverage Period:

02-01-22 through 08-01-22
12:01 a.m. local time at the address of the named insured.

Date Issued: December 29, 2021

VENECE M TUGGLE AND KENNETH D
ALEXANDER
1416 PINE ST
NORRISTOWN PA 19401-3211

Email Address: VENECETUGGLE@HOTMAIL.COM

**PENNSYLVANIA LAW REQUIRES THAT WE NOTIFY YOU THAT THIS POLICY COVERS COLLISION DAMAGE TO A RENTAL VEHICLE WITH THE SAME POLICY PROVISIONS AND CONDITIONS, COVERAGE LIMITS AND DEDUCTIBLES THAT APPLY TO YOUR OWNED AUTO. IF YOU HAVE MORE THAN ONE CAR INSURED, THE RENTAL CAR WOULD BE COVERED WITH THE BROADEST (LOWEST DEDUCTIBLES) COVERAGES INCLUDED UNDER THE COLLISION ON YOUR POLICY. REMEMBER COLLISION COVERAGE EXTENDS ONLY IF YOU HAVE PURCHASED IT FOR YOUR OWN VEHICLES.**

| Named Insured | Additional Drivers |
|---|---|
| Venece Monet Tuggle | Steven L Anthony |
| Kenneth Dean Alexander Jr | |

| Vehicles | VIN | Vehicle Location | Finance Company/ Lienholder |
|---|---|---|---|
| 1 2013 Honda Odyssey | 5FNRL5H21DB058806 | NORRISTOWN PA 19401 | AMERICAN HONDA FINANCE |
| 2 2009 Honda Civic LX | 1HGFA16579L012661 | NORRISTOWN PA 19401 | |
| 3 2004 Ford ExXLTSpnbx | 1FMZU73KX4UB00750 | NORRISTOWN PA 19401 | |
| 4 2020 Honda Accord | 1HGCV1F39LA094143 | NORRISTOWN PA 19401 | FIFTH THIRD BANK |

| Coverages* | Limits and/or Deductibles | Vehicle 1 | Vehicle 2 | Vehicle 3 | Vehicle 4 |
|---|---|---|---|---|---|
| Bodily Injury Liability Each Person/Each Occurrence | $25,000/$50,000 | $58.28 | $51.01 | $65.97 | $39.97 |
| Property Damage Liability | $25,000 | $101.19 | $104.55 | $121.67 | $88.39 |
| First Party Benefits | Option H | $42.19 | $39.59 | $37.58 | $40.78 |

T-P
DEC_PAGE (03-14) (Page 1 of 4)

| Coverages* | Limits and/or Deductibles | Vehicle 1 | Vehicle 2 | Vehicle 3 | Vehicle 4 |
|---|---|---|---|---|---|
| Uninsured Motorists/No Stacking Each Person/Each Occurrence | $25,000/$50,000 | $12.52 | $10.76 | $12.52 | $12.79 |
| Underinsured Motorist/No Stacking Each Person/Each Occurrence | $25,000/$50,000 | $27.87 | $23.97 | $27.87 | $28.47 |
| Comprehensive (Excluding Collision) | $250 Ded | $56.03 | $32.97 | $36.80 | $105.73 |
| Collision | $500 Ded | $114.02 | $83.00 | $60.42 | $183.22 |
| Emergency Road Service | ERS FULL | - | - | - | $2.59 |
| Rental Reimbursement | $30 Per Day $900 Max | $12.60 | $12.60 | $12.60 | $12.60 |
| Mechanical Breakdown | $250 Ded | - | - | - | $19.93 |
| **Six Month Premium Per Vehicle** | | **$424.70** | **$358.45** | **$375.43** | **$534.47** |
| **Total Six Month Premium** | | | | | **$1,693.05** |

*Coverage applies where a premium or $0.00 is shown for a vehicle.

If you elect to pay your premium in installments, you may be subject to an additional fee for each installment. The fee amount will be shown on your billing statements and is subject to change.

## Discounts

**The total value of your discounts is** **$1,172.14**

| | |
|---|---|
| Restraint | $68.63 |
| Multi-Vehicle Discount | $653.27 |
| Military | $69.88 |
| Good Driver | $231.26 |
| Anti-Lock Brake | $23.19 |
| Anti-Theft | $25.74 |
| Sponsored Marketing | $89.14 |
| New Vehicle Discount | $11.03 |

**The following discounts have also been applied**

| | |
|---|---|
| Secondary Underwriting Tier | Included |
| Driving Experience | Included |

**Contract Type:**   A30PA

**Contract Amendments:**  ALL VEHICLES - A30PA A54PA

**Unit Endorsements:**    UE316(VEH 1,4); A471(VEH 1,2,3,4); A431(VEH 1,2,3,4); A470(VEH 1,2,3,4); A115(VEH 4); A180C(VEH 4)

## Important Policy Information

- Congratulations! You have earned the free Accident Forgiveness benefit. That means we will waive the surcharge associated with the first at-fault accident caused by an eligible driver on your policy.

- If you have not already taken advantage of our Recurring Credit Card or Electronic Funds Transfer (EFT) programs, please visit geico.com or call 1-800-932-8872 to enroll in either program.

- Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

- Please review the front and/or back of this page for your coverage and discount information.

- You are receiving a $89.14 discount based on your membership in NAVY FEDERAL CREDIT UNION - NFCU.

- You are currently carrying the Full Tort Option on your policy.

- Reminder - Physical damage coverage will not cover loss for custom options on an owned automobile, including equipment, furnishings or finishings including paint, if the existence of those options has not been previously reported to us. This reminder does NOT apply in VIRGINIA, however, in Virginia coverage is limited for custom furnishings or equipment on pick-up trucks and vans but you may purchase coverage for this equipment. Please call us at 1-800-841-3000 or visit us at geico.com if you have any questions.

- Congratulations!  You have qualified for a Military Discount on your policy. The reduction is reflected in your policy premium.

- We have a new rating program available. If you're interested in learning more, inquire at 1-877-304-1401.

- As your vehicle ages, the Multi-Risk Coverage you carry becomes nearly impossible to replace.  Renew your policy today and enjoy continuous coverage against costly mechanical breakdowns.

- We welcome you to our GEICO family in the Auto Voluntary B20 rate program.

- Confirmation of coverage has been sent to your lienholder and/or additional insured.

- Claims incurred while an insured vehicle is being used to carry passengers for hire may not be covered by this contract. Please review the contract for a full list of exclusions and contact us if you plan to use any of your insured vehicles for this purpose.



**One GEICO Plaza**
Washington, DC 20076-0001
**Telephone: 1-800-841-3000**

# Pennsylvania Family Automobile Insurance Policy

A30PA (09-19)

# YOUR POLICY INDEX

**Page**                                                                       **Page**

## SECTION I - LIABILITY COVERAGES
**Your Protection Against Claims From Others**

Definitions........................................................................ 3
Losses We Will Pay For You.............................................. 4
Additional Payments We Will Make Under The Liability
Coverages ........................................................................ 4
    Legal Expenses and Court Costs
    Bail and Appeal Bonds
    First Aid Expenses
Exclusions ........................................................................ 4
Persons Insured: Who Is Covered .................................... 5
Financial Responsibility Laws .......................................... 6
Limits of Liability.............................................................. 6
Other Insurance .............................................................. 6
Out of State Insurance .................................................... 6
Conditions ........................................................................ 6
    Notice
    Two or More Autos
    Assistance and Cooperation of The Insured
    Action Against Us
    Subrogation

## SECTION II - FIRST PARTY BENEFITS

Schedule .......................................................................... 7
Definitions of Terms ........................................................ 8
Payments We Will Make .................................................. 9
Exclusions ........................................................................ 10
Limits of Liability.............................................................. 10
Priorities of Policies......................................................... 11
Conditions ........................................................................ 11
    Action Against Us Notice
    Medical Reports; Proof of Claim Customary Charges
    For Treatment Non-Duplication of Benefits
    Policy Period; Territory

## SECTION III - PHYSICAL DAMAGE COVERAGES

**Your Protection For Loss of or Damage to Your Car**

Definitions........................................................................ 12
Losses We Will Pay .......................................................... 13
    Comprehensive Coverage ........................................ 13
    Collision Coverage.................................................... 13
Additional Payments We Will Make Under The Physical
Damage Coverages .......................................................... 13
Car Rental If Your Car is Stolen
Exclusions ........................................................................ 13
Limit of Liability............................................................... 14

Conditions........................................................................ 14
    Notice
    Two or More Autos
    Assistance and Cooperation of The Insured
    Action Against Us
    Insured's Duties in Event of Loss Appraisal
    Payment of Loss
    No Benefit To Bailee Subrogation Assignment

## SECTION IV - UNINSURED AND UNDERINSURED MOTORISTS COVERAGE

**Protection For You and Your Passengers For Injuries
Caused by Uninsured, Underinsured and Hit and Run
Motorists**........................................................................ 16

## SECTION V - GENERAL CONDITIONS

**The Following Apply To All Coverages On This Policy**

Territory .......................................................................... 16
Premium .......................................................................... 16
Changes ........................................................................... 16
Assignment ...................................................................... 16
Policy Period..................................................................... 16
Cancellation By The Insured ............................................ 17
Cancellation By Us ........................................................... 17
Renewal............................................................................ 17
Dividend Provision............................................................ 17
Declarations..................................................................... 17
Fraud and Misrepresentation........................................... 17
Examination Under Oath.................................................. 17
Terms of Policy Conformed To Statutes.......................... 18
Disposal of Vehicle .......................................................... 18
Choice of Law................................................................... 18

## SECTION VI - AMENDMENTS AND ENDORSEMENTS

**Special Endorsement United States
Government Employees** ............................................... 18

Whenever "he," "his," him," or "himself" appears in this policy, you may read "she," "her," or "herself."

### AGREEMENT

**We, the Company named in the Declarations attached to this policy, make this agreement with  *you*, the policyholder. Relying on the information  *you* have furnished and the Declarations attached to this policy and if *you* pay *your* premium when due, we will do the following:**

# SECTION I - LIABILITY COVERAGES
### Bodily Injury Liability and Property Damage Liability
### Your Protection Against Claims From Others

**DEFINITIONS**

The words bolded and italicized in Section I of this policy are defined below:

1. ***Auto business*** means the business of selling, repairing, renting, leasing, brokering, servicing, storing, transporting or parking of autos.

2. ***Bodily injury*** means bodily injury to a person, including resulting sickness, disease or death. However,  ***bodily injury*** does not include either emotional distress, or physical injury resulting from emotional distress, to a person if that person, or the motor vehicle that person was occupying, did not have physical contact with:
   (a) the ***owned auto*** or ***non-owned auto***; or
   (b) another motor vehicle or object as a result of the ownership, maintenance or use of the  ***owned auto*** or ***non-owned auto***.

3. ***Farm auto*** means a truck type vehicle with a gross vehicle weight of 15,000 pounds or less, not used for commercial purposes other than farming.

4. ***Insured*** means a person or organization described under "Persons Insured."

5. ***Non-owned auto*** means a ***private passenger auto***, ***farm auto***, ***utility auto***, or ***trailer*** not owned by or furnished for the regular use of either *you* or *your relatives*, other than a ***temporary substitute auto***. ***You*** or ***your relative*** must be using the ***non-owned auto*** or ***trailer*** within the scope of permission given by its owner. An auto rented or leased for more than 30 days will be considered as furnished for regular use.
   A ***non-owned auto*** does not include:
   (a) any motor vehicle rented or leased by ***you*** or a ***relative*** for the purpose of providing ***ride-sharing*** services. A motor vehicle is considered to have been rented or leased for the purpose of providing  ***ride-sharing*** services, whether actually used for ***ride-sharing*** or not, if the rental or lease agreement specifically allows the motor vehicle to be used for ***ride-sharing*** with a ***transportation network company***; or
   (b) any motor vehicle rented or leased by ***you*** or a ***relative*** which is registered for use for ***ride-sharing*** with a ***transportation network company***; or
   (c) any motor vehicle rented or leased by ***you*** or a ***relative*** which is approved for use for ***ride-sharing*** with a ***transportation network company***; or
   (d) any motor vehicle rented or leased by ***you*** or a ***relative*** which displays an exterior marking that identifies the motor vehicle as for hire.

6. ***Owned auto*** means:
   (a) a vehicle described in the policy for which a premium is shown for these coverages;
   (b) a ***trailer*** owned by ***you***;
   (c) a ***private passenger auto***, ***farm auto***, or ***utility auto***, which ***you*** acquire ownership of during the policy period or for which ***you*** enter into a lease for a term of six months or more during the policy period, if:
       (i) it replaces an ***owned auto*** as defined in (a) above; or
       (ii) we insure all ***private passenger autos***, ***farm autos***, and ***utility autos*** owned or leased by ***you*** on the date of the acquisition and ***you*** ask us to add it to the policy no more than 30 days later;
   (d) a ***temporary substitute auto***.

7. ***Private passenger auto*** means a four-wheel private passenger, station wagon or jeep-type auto.

8. ***Relative*** means a person related to ***you*** who resides in ***your*** household.

9. ***Temporary substitute auto*** means an automobile or ***trailer***, not owned by ***you***, temporarily used with the permission of the owner. This vehicle must be used as a substitute for the  ***owned auto*** or ***trailer*** when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction.

A *temporary substitute auto* does not include:

(a) any motor vehicle rented or leased by *you* or a *relative* for the purpose of providing *ride-sharing* services. A motor vehicle is considered to have been rented or leased for the purpose of providing *ride-sharing* services, whether actually used for *ride-sharing* or not, if the rental or lease agreement specifically allows the motor vehicle to be used for *ride-sharing* with a *transportation network company*; or

(b) any motor vehicle rented or leased by *you* or a *relative* which is registered for use for *ride-sharing* with a *transportation network company*; or

(c) any motor vehicle rented or leased by *you* or a *relative* which is approved for use for *ride-sharing* with a *transportation network company*; or

(d) any motor vehicle rented or leased by *you* or a *relative* which displays an exterior marking that identifies the motor vehicle as for hire.

10. *Trailer* means a *trailer* designed to be towed by a *private passenger auto*, if not being used for business or commercial purposes with a vehicle other than a *private passenger auto*, *farm auto*, or *utility auto*.

11. *Utility auto* means a vehicle, other than a *farm auto*, with a gross vehicle weight of 15,000 pounds or less of the pick-up body, van or panel truck type not used for commercial purposes.

12. *War* means armed conflict between nations, whether or not declared, civil war, insurrection, rebellion or revolution.

13. *You* and *your* mean the Named Insured shown in the Declarations or his or her spouse if a resident of the same household.

14. *Personal vehicle sharing program* means a business, organization, network or group facilitating the sharing of private passenger motor vehicles for use by individuals or businesses.

15. *Ride-sharing* means the use of any vehicle by any *insured* in connection with a *transportation network company* from the time an *insured* logs on to or signs in to any computer or digital application or platform that connects or matches driver(s) with passenger(s) until the time an *insured* logs out of or signs off of any such application or platform, including while en route to pick up passenger(s) and while transporting passenger(s).

16. *Transportation network company* means a company or organization facilitating and/or providing transportation services using a computer or digital application or platform to connect or match passengers with drivers for compensation or a fee.

## LOSSES WE WILL PAY FOR YOU

Under Section I, we will pay damages which an *insured* becomes legally obligated to pay because of:

1. *bodily injury*, sustained by a person, and

2. damage to or destruction of property,

arising out of the ownership, maintenance or use of the *owned auto* or a *non-owned auto*. We will defend any suit for damages payable under the terms of this policy. We may investigate and settle any claim or suit.

## ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE LIABILITY COVERAGES

1. All investigative and legal costs incurred by us.

2. All court costs charged to an *insured* in a covered lawsuit.

3. Interest calculated on that part of a judgment that is within our limit of liability and accruing:
   (a) Before the judgment, where owed by law, and until we pay, offer to pay, or deposit in court the amount due under this coverage;
   (b) After the judgment, and until we pay, offer to pay, or deposit in court, the amount due under this coverage.

4. Premiums for appeal bonds in a suit we appeal, or premiums for bonds to release attachments; but the face amount of these bonds may not exceed the applicable limit of liability.

5. Premiums for bail bonds paid by an *insured* due to traffic law violations arising out of the use of an insured auto, not to exceed $250 per bail bond.

6. We will upon request by an *insured*, provide reimbursement for the following items:
   (a) Reasonable costs, up to $500, incurred when that *insured* provides and renders first aid to others at the time of an accident involving an *owned auto* or *non-owned auto*.
   (b) Loss of earnings up to $50 a day, but not other income, if we request an *insured* to attend hearings and trials.
   (c) All reasonable costs, incurred by an *insured* at our request.

## EXCLUSIONS

## When These Coverages Do Not Apply

Section I does not apply to any claim or suit for damage if one or more of the exclusions listed below applies.

1.  We do not cover, in excess of the financial responsibility limits, any vehicle used to carry goods for hire, including but not limited to delivery of food or any other products.

2.  We do not cover *bodily injury* or property damage caused intentionally by or at the direction of an *insured*.

3.  We do not cover *bodily injury* or property damage that is insured under a nuclear liability policy.

4.  We do not cover *bodily injury* or property damage arising from the operation of farm machinery.

5.  We do not cover *bodily injury* to an employee of an *insured* arising out of and in the course of employment by an *insured*.
    However, *bodily injury* of a domestic employee of the *insured* is covered unless benefits are payable or are required to be provided under a workers' or workmen's compensation law.

6.  We do not cover *bodily injury* to a fellow employee of an *insured* if the fellow employee's *bodily injury* arises from the use of an auto while in the course of employment and if worker's compensation or other similar coverage is available. We will defend *you* if suit is brought by a fellow employee against *you* alleging use, ownership or maintenance of an auto by *you*.

7.  We do not cover a *non-owned auto* while maintained or used by any person while such person is employed or otherwise engaged in (1) any *auto business* if the accident arises out of that business; (2) any other business or occupation of any *insured* if the accident arises out of that business or occupation, except a *private passenger auto* used by *you* or *your* chauffeur or a domestic servant while engaged in such other business.

8.  We do not cover damage to:
    (a) Property, including motor vehicles of any type, owned, operated, transported, or used by an *insured*; or
    (b) Property, including motor vehicles of any type, rented to or in charge of an *insured* other than a residence or private garage.

9.  We do not cover an auto acquired by *you* during the policy term, if *you* have purchased other liability insurance for it.

10. We do not cover:
    (a) the United States of America or any of its Agencies;
    (b) any person, including *you*, if protection is afforded under the provisions of the Federal Tort Claims Act.

11. We do not cover any liability assumed under any contract or agreement

12. We do not cover *bodily injury* or property damage sustained while operating or using:
    (a) a motor vehicle driven in or preparing for any racing, speed, or demolition contest or stunting activity of any nature, whether or not prearranged or organized.
    (b) a motor vehicle on a track designed primarily for racing or high speed driving. This does not apply if the vehicle is being used in connection with an activity other than racing, high speed driving or any competitive driving.

13. We do not cover punitive or exemplary damages.

14. We do not cover any vehicle:
    (a) used to carry persons for compensation or a fee; or
    (b) while being used for *ride-sharing*.
    However, this exclusion does not apply to ordinary car pools. An ordinary car pool is one where:
    (i) an *insured* receives no payment for using a vehicle for a car pool ride; or
    (ii) an *insured* receives only reimbursement for expenses for using a vehicle for a car pool ride, the reimbursement an *insured* receives for providing the car pool ride does not exceed reasonable cost of gas and depreciation for the distance traveled, and the reimbursement received by an *insured* is not required to be reported for income tax purposes.

15. We do not cover any person or organization while any motor vehicle is operated, maintained or used as part of personal motor vehicle sharing facilitated by a *personal vehicle sharing program*.

## PERSONS INSURED

### Who Is Covered

Section I applies to the following as *insureds* with regard to an *owned auto*:

1.  *you* and *your relatives*;

2.  any other person using the auto with *your* permission. The actual use must be within the scope of that permission;

3.  any other person or organization for his or its liability because of acts or omissions of an *insured* under 1 or 2 above.

Section I applies to the following with regard to a *non-owned auto*:

1.  *You* and *your relatives* when using a *private passenger auto*, *utility auto*, *farm auto*, or *trailer*. Such use by *you* or *your relatives* must be with the permission, or reasonably believed to be with the permission, of the owner and within the scope of that permission;

**2.** a person or organization, not owning or hiring the auto, regarding his or its liability because of acts or omissions of an *insured* under 1 above.

The limits of liability stated in the Declarations are our maximum obligations regardless of the number of *insureds* involved in the occurrence.

## FINANCIAL RESPONSIBILITY LAWS

When this policy is certified as proof of financial responsibility for the future under the provisions of a motor vehicle financial responsibility law, this liability insurance will comply with the provisions of that law. The *insured* agrees to reimburse us for payments made by us which we would not have had to make except for this agreement.

## LIMITS OF LIABILITY

Regardless of the number of autos or *trailers* to which this policy applies:

**1.** The limit of *bodily injury* liability stated in the Declarations as applicable to "each person" is the limit of our liability for all damages, including damages for care and loss of services, because of *bodily injury* sustained by one person as the result of one occurrence.

**2.** The limit of such liability stated in the Declarations as applicable to "each occurrence" is, subject to the above provision respecting each person, the total limit of our liability for all such damages, including damages for care and loss of services, because of *bodily injury* sustained by two or more persons as the result of any one occurrence.

**3.** The limit of property damage liability stated in the Declarations as applicable to each occurrence is the total limit of our liability for all damages because of injury to or destruction of the property of one or more persons or organizations, including the loss of use of the property as the result of any one occurrence.

## OTHER INSURANCE

If the *insured* has other insurance against a loss covered by Section I of this policy, we will not owe more than our pro rata share of the total coverage available.

Any insurance we provide for losses arising from the ownership, maintenance or use of a vehicle *you* do not own shall be excess over any other valid and collectible insurance, self-insurance, or bond; except for a motor vehicle provided by a motor vehicle dealer when an *insured* has custody of or is operating that motor vehicle, while the *insured's* motor vehicle is being transported, serviced, repaired or inspected by the motor vehicle dealer. This exception only applies to the loan of a motor vehicle by a motor vehicle dealer that occurs without financial remuneration in the form of a fee, rental or lease charge paid directly by the insured operating the motor vehicle.

## OUT OF STATE INSURANCE

When the policy applies to the operation of a motor vehicle outside of *your* state, we agree to increase *your* coverages to the extent required of out-of-state motorists by local law. This additional coverage will be reduced to the extent that *you* are protected by another insurance policy. No person can be paid more than once for any item of loss.

## CONDITIONS

The following conditions apply to Section I.

**1.** NOTICE

As soon as possible after an occurrence, written notice must be given to us or our authorized agent stating:

(a) the identity of the *insured*;

(b) the time, place and details of the occurrence;

(c) the names and addresses of the injured, and of any witnesses; and

(d) the names of the owners and the description and location of any damaged property.

If a claim or suit is brought against an *insured*, he must promptly send us each demand, notice, summons or other process received.

**2.** TWO OR MORE AUTOS

If this policy covers two or more autos, the limit of coverage applies separately to each. An auto and an attached *trailer* are considered to be one auto.

**3.** ASSISTANCE AND COOPERATION OF THE INSURED

The *insured* will cooperate and assist us, if requested:

(a) in the investigation of the occurrence;

(b) in making settlements;

(c) in the conduct of suits;

(d) in enforcing any right of contribution or indemnity against any legally responsible person or organization because of *bodily injury* or property damage;

(e) at trials and hearings;

(f)  in securing and giving evidence; and
(g) by obtaining the attendance of witnesses.
Only at his own cost will the **insured** make a payment, assume any obligation or incur any cost other than for first aid to others.

4. ACTION AGAINST US
No suit will lie against us:
(a) unless the **insured** has fully complied with all the policy's terms and conditions; and
(b) until the amount of the **insured's** obligation to pay has been finally determined either:
    (i)  by a final judgment against the **insured** after actual trial; or
    (ii) by written agreement of the **insured**, the claimant and us.
A person or organization or the legal representative of either, who secures a judgment or written agreement, may then sue to recover up to the policy limits.
No person or organization, including the **insured**, has a right under this policy to make us a defendant in an action to determine the **insured's** liability.
Bankruptcy or insolvency of the **insured** or of his estate will not relieve us of our obligations.

5. SUBROGATION
When payment is made under this policy, we will be subrogated to all the **insured's** rights of recovery against others. The **insured** will help us to enforce these rights. The **insured** will do nothing after loss to prejudice these rights.
This means we will have the right to sue for or otherwise recover the loss from anyone else who may be held responsible.

## SECTION II - FIRST PARTY BENEFITS

**SCHEDULE**

| OPTION | MEDICAL EXPENSES | INCOME LOSS | FUNERAL EXPENSE | ACCIDENTAL DEATH |
|---|---|---|---|---|
| A | $ 5,000 | none | none | none |
| B | 5,000 | none | none | 25,000 |
| C | 5,000 | none | 2,500 | none |
| D | 5,000 | none | 2,500 | 25,000 |
| E | 5,000 | 1,000 per month 5,000 maximum | none | none |
| F | 5,000 | 1,000 per month 5,000 maximum | none | 25,000 |
| G | 5,000 | 1,000 per month 5,000 maximum | 2,500 | none |
| H | 5,000 | 1,000 per month 5,000 maximum | 2,500 | 25,000 |
| I | 5,000 | 2,500 per month 50,000 maximum | none | none |
| J | 10,000 | none | 2,500 | none |
| K | 5,000 | 2,500 per month 50,000 maximum | 2,500 | none |
| L | 5,000 | 2,500 per month 50,000 maximum | 2,500 | 25,000 |
| M | 10,000 | none | none | none |
| N | 10,000 | 1,000 per month 5,000 maximum | none | none |
| O | 10,000 | 1,000 per month 5,000 maximum | 2,500 | 10,000 |
| P | 10,000 | none | 1,500 | none |
| Q | 10,000 | 1,000 per month 5,000 maximum | 1,500 | none |

| OPTION | MEDICAL EXPENSES | INCOME LOSS | FUNERAL EXPENSE | ACCIDENTAL DEATH |
|---|---|---|---|---|
| R | 25,000 | 1,500 per month 25,000 maximum | 1,500 | 10,000 |
| S | 50,000 | 1,500 per month 25,000 maximum | 2,500 | 10,000 |
| T | 100,000 | none | none | none |
| U | 100,000 | none | 1,500 | none |
| V | 100,000 | none | 1,500 | 25,000 |
| W | 100,000 | none | 2,500 | none |
| X | 100,000 | none | 2,500 | 25,000 |
| Y | 100,000 | 1,000 per month 5,000 maximum | 1,500 | none |
| 1 | 100,000 | 1,000 per month 5,000 maximum | 1,500 | 25,000 |
| 2 | 100,000 | 1,000 per month 5,000 maximum | 2,500 | none |
| 3 | 100,000 | 1,000 per month 5,000 maximum | 2,500 | 25,000 |
| 4 | 100,000 | 2,500 per month 50,000 maximum | 1,500 | none |
| 5 | 100,000 | 2,500 per month 50,000 maximum | 1,500 | none |
| 6 | 100,000 | 2,500 per month 50,000 maximum | 2,500 | none |
| 7 | 100,000 | 2,500 per month 50,000 maximum | 2,500 | 25,000 |

8    Combination Benefits of Medical Expense, Income Loss, Funeral Expense and Accidental Death with a single overall aggregate limit up to $277,500 with limits of $2,500 for Funeral Expense and $25,000 for Accidental Death.

| OPTION | MEDICAL EXPENSES | INCOME LOSS | FUNERAL EXPENSE | ACCIDENTAL DEATH |
|---|---|---|---|---|
| 9A | 50,000 | 1,000 per month 5,000 maximum | 1,500 | none |
| AA | 5,000 | 2,500 per month 50,000 maximum | none | 25,000 |
| BB | 100,000 | none | none | 25,000 |
| CC | 100,000 | 2,500 per month 50,000 maximum | none | none |
| DD | 100,000 | 2,500 per month 50,000 maximum | 2,500 | none |
| EE | 100,000 | 2,500 per month 50,000 maximum | none | 25,000 |

## DEFINITIONS

The definitions of terms for Section I apply to Section II, except for the following special definitions:

1.  **Accidental death** means the death of the **named insured** or **relative** if death occurs within 24 months from the date of the accident. The death benefit shall be paid to the executor or administrator of the estate of the **named insured** or **relative**.
2.  **Bodily injury** means accidental bodily harm to a person and that person's resulting illness, disease or death.
3.  **Eligible person** means:
    (a) the **named insured** or any **relative**;
    (b) any other person who sustains **bodily injury**
        (1) while **occupying** the **insured motor vehicle**, or
        (2) while a non-occupant of a **motor vehicle** if injured as a result of an accident in Pennsylvania involving the **insured motor vehicle**. An unoccupied parked **insured motor vehicle** is not a **motor vehicle** involved in an accident unless it was parked in a manner as to create an unreasonable risk of injury.
4.  **Funeral expense** means reasonable expenses directly related to the funeral, burial, cremation or other form of disposition of the remains of the deceased **eligible person**. The expenses must be incurred as a result of the death of the **eligible person** and within 24 months from the date of the accident.

5. **Income loss** means 80% of gross income actually lost by an **eligible person**. **Income loss** includes reasonable expenses actually incurred for hiring:

    (a) a substitute to perform the work a self-employed **eligible person** would have performed except for **bodily injury**, or

    (b) special help, thereby enabling a person to work, thereby reducing loss of gross income.

    **Income loss** does not include:

    (a) loss of expected income for any period following the death of an **eligible person**, or

    (b) expenses incurred for services performed following the death of an **eligible person**, or

    (c) any loss of income during the first five (5) working days the **eligible person** did not work after the accident because of the **bodily injury**.

6.  **Insured motor vehicle** means a **motor vehicle**:

    (a) to which the bodily injury liability insurance of the policy applies and for which a specific premium is charged; and

    (b) for which the **named insured** maintains First Party Benefits as required under the Pennsylvania Motor Vehicle Financial Responsibility Law.

7. **Medical expenses** means reasonable and necessary charges for:

    (a) medical treatment, including but not limited to:

        (1) medical, hospital, surgical, nursing and dental services;

        (2) medications, medical supplies and prosthetic devices; and

        (3) ambulance.

    (b) medical and rehabilitative services, including but not limited to:

        (1) medical care;

        (2) licensed physical therapy, vocational rehabilitation and occupational therapy;

        (3) osteopathic, chiropractic, psychiatric and psychological services; and

        (4) optometric services, speech pathology and audiology;

    (c) non-medical remedial care and treatment rendered in accordance with a recognized religious method of healing.

    All medical treatment and medical and rehabilitative services must be provided by or prescribed by a person or facility approved by the Department of Health, the equivalent governmental agency responsible for health programs or the accrediting designee of a department or agency of the state in which those services are provided.

    Payment of **medical expenses** incurred after 18 months from the date of the accident causing **bodily injury** shall be made only if within 18 months from the date of the accident it is ascertainable with reasonable medical probability that further expenses may be incurred as a result of the injury.

8. **Motor vehicle** means any vehicle which is self-propelled except one which is propelled:

    (a) solely by human power,

    (b) by electric power obtained from overhead trolley wires, or

    (c) upon rails.

9. **Named insured** means the person or organization named in the Declarations including the spouse if a resident of the same household.

10. **Occupying** means in or upon, entering into or alighting from.

11. **Relative** means, if resident in the same household as the **named insured**; any person related to the **named insured** by blood, marriage or adoption, including a minor in the custody of the **named insured**, or such related person, whether or not temporarily residing elsewhere.

**PAYMENTS WE WILL MAKE**

In accordance with the Pennsylvania Motor Vehicle Financial Responsibility Law, we will pay first party benefits for:

    (a) (1) **medical expenses**,

        (2) **income loss**, and

        (3) **funeral expenses**

    arising from **bodily injury** to an **eligible person** resulting from the maintenance or use of a **motor vehicle** as a vehicle; and

    (b) **accidental death** arising from **bodily injury** to the **named insured** or **relative** resulting from the maintenance or use of a **motor vehicle** as a vehicle.

Only the First Party Benefits shown as applicable in the Declarations and Schedule will apply.

## EXCLUSIONS

### When These Coverages Do Not Apply

We do not cover **bodily injury** to:

1.  any person who is the owner of a currently registered **motor vehicle** for which Financial Responsibility is not provided, even if that person is occupying or struck by a **motor vehicle** for which Financial Responsibility is provided, unless that person is the owner of another currently registered **motor vehicle** for which Financial Responsibility is provided in which event that person is covered:
    (a)  only while **occupying** or operating the **motor vehicle** for which Financial Responsibility is provided; or
    (b)  while **occupying** or operating a **motor vehicle** not owned by him; or
    (c)  if struck as a pedestrian by a **motor vehicle**.
2.  any person while **occupying** a motorcycle, motor-driven cycle, motorized pedalcycle or like type vehicle required to be registered under Title 75 or a recreational vehicle not intended for highway use;
3.  any person other than the **named insured** or any **relative**, who knowingly converts a **motor vehicle** if the **bodily injury** arises out of the maintenance or use of the converted vehicle;
4.  any person when the conduct of that person contributed to the **bodily injury** sustained by that person, while:
    (a)  intentionally injuring or attempting to intentionally injure himself or another,
    (b)  committing a felony, or
    (c)  seeking to elude lawful apprehension or arrest by a law enforcement official;
5.  any person engaged in the business of repairing, servicing, or otherwise maintaining **motor vehicles** if the **bodily injury** arises out of that business unless the conduct occurs off the business premises;
6.  any person not **occupying** a **motor vehicle** other than the **named insured** or any **relative**, if the accident occurs outside the Commonwealth of Pennsylvania;
7.  any person as a direct result of loading or unloading any **motor vehicle**;
8.  any person while maintaining or using a **motor vehicle** while located for use as a residence or premises;
9.  any person due to war, whether or not declared, civil war, insurrection, revolution or rebellion or any accompanying acts or conditions; and
10.  any person caused by nuclear radioactivity or explosion.
11.  any person **occupying** any **vehicle** while being used for **ride-sharing**.
    However, this exclusion will not apply to ordinary car pools. An ordinary car pool is one where:
    (i)  an **insured** receives no payment for using a vehicle for a car pool ride; or
    (ii)  an **insured** received only reimbursement for expenses for using a vehicle for a car pool ride, the reimbursement an **insured** receives for providing the car pool ride does not exceed the reasonable cost of gas and depreciation for the distance traveled, and the reimbursement received by an **insured** is not required to be reported for income tax purposes.
    This exclusion does not apply to **you** or any **relative** while a passenger and not operating the vehicle.
12.  any person other than the **named insured** or any **relative occupying** any **motor vehicle** while the **motor vehicle** is operated, maintained or used as part of personal vehicle sharing facilitated by a **personal vehicle sharing program**.
13.  any person who sustains injury while operating or using:
    (a)  a **motor vehicle** driven in or preparing for any racing, speed, or demolition contest or stunting activity of any nature, whether or not prearranged or organized.
    (b)  a **motor vehicle** on a track designed primarily for racing or high speed driving. This does not apply if the vehicle is being used in connection with an activity other than racing, high speed driving or any competitive driving.

### LIMITS OF LIABILITY

1.  Our liability for benefits with respect to **bodily injury** to any one **eligible person** in any one **motor vehicle** accident is limited to the amount shown in the Declarations and Schedule; or
2.  If the Declarations shows that Combination Benefits apply, we will pay:

|  | BENEFIT | LIMIT |
|---|---|---|
| (a) | **Medical Expenses** | Subject to Aggregate Limit |
| (b) | **Income Loss** | Subject to Aggregate Limit |
| (c) | **Funeral Expenses** | Subject to amount shown in the Declarations and Schedule |
| (d) | **Accidental Death** | Subject to amount shown in the Declarations and Schedule |

**3.** The Aggregate Limit is shown in the Declarations and Schedule. The Aggregate Limit is the total amount payable for all benefits (as defined and limited in this policy) with respect to **bodily injury** to any one **eligible person** in any one **motor vehicle** accident for expenses and loss incurred within three years from the date of the accident.

**4.** Benefits shall not be increased for any **eligible person** by adding together the limits of liability:
    (a) under this policy because there are multiple **motor vehicles** covered under this policy, or
    (b) under multiple **motor vehicle** policies covering an **eligible person** for the same loss.

Any amount payable by us under the terms of this coverage for First Party Benefits shall be excess over all benefits that an **eligible person** receives or is entitled to receive under any workers' compensation law or similar law.

## PRIORITIES OF POLICIES

We will pay First Party Benefits in accordance with the following order of priority. We will not pay if there is another insurer at a higher level of priority. The priority order is:

**First -**     The insurer providing benefits to the **eligible person** as a **named insured**.

**Second -**    The insurer providing benefits to the **eligible person** as a **relative** who is not a **named insured** under another policy provided coverage under the Pennsylvania Motor Vehicle Financial Responsibility Law.

**Third -**     The insurer of the **motor vehicle** which the **eligible person** is **occupying** at the time of the accident.

**Fourth -**    The insurer providing benefits on any **motor vehicle** involved in the accident if the **eligible person** is not (a) **occupying** a **motor vehicle**, and (b) provided coverage under any other policy.

The "First" category listed above is the highest level of priority, and the "Fourth" category listed above is the lowest level of priority.

If two or more policies have equal priority:
    (a) the insurer against which the claim is first made shall process and pay the claim as if wholly responsible.
    (b) the maximum recovery under all policies will not exceed the amount payable under the policy with the highest dollar limits of benefits.

For the purposes of determining priorities, an unoccupied parked **motor vehicle** is not a **motor vehicle** involved in an accident unless it was parked in a manner as to create an unreasonable risk of injury.

## CONDITIONS

**1.** ACTION AGAINST US.
    Any action against us shall be filed in the court of competent jurisdiction in the county or federal district where the **eligible person** resided at the time of the accident. No action shall lie against us on the part of any **eligible person** unless such person has fully complied with all the terms of this coverage.

**2.** NOTICE.
    If an accident occurs, written notice adequately identifying the **eligible person** and reasonably accessible facts concerning the time, place and circumstances of the accident shall be given as soon as practicable by or on behalf of each **eligible person** to us or any of our authorized agents.

**3.** MEDICAL REPORTS; PROOF OF CLAIM.
    As soon as practicable the **eligible person**, or someone on his behalf, shall give us written proof of claim, under oath if required, fully describing the nature and extent of **bodily injury**, treatment and rehabilitation received and contemplated and other information to assist us in determining the amount due and payable.

    Proof of claim shall be made upon forms furnished by us unless we fail to supply such forms within 15 days after receiving notice of claim.

    The **eligible person** shall submit to mental and physical examinations by physicians selected by us when and as often as we may reasonably require. We will pay the cost of such examinations.

    The **eligible person** (or, in the event of such person's incapacity or death, his legal representative) shall, if we request, sign papers to enable us to obtain medical reports and copies of records. A copy of such medical report will be forwarded to such **eligible person** upon his written request.

    If benefits for **income loss** are claimed, the **eligible person** presenting such claim shall authorize us to obtain details of all earnings paid to him by an employer or earned by him since the time of the injury or during the year immediately preceding the date of the accident.

**4.** CUSTOMARY CHARGES FOR TREATMENT.
    The amount we will pay to a person or institution providing treatment, accommodations, products or services to an **eligible person** for an injury covered by **medical expense** benefits shall not exceed the amount the person or institution customarily charges for like treatment, accommodations, products and services in cases involving no insurance.

5. NON-DUPLICATION OF BENEFITS.
No *eligible person* shall recover duplicate benefits for the same elements of loss under this or any other similar automobile insurance including self-insurance.

6. POLICY PERIOD; TERRITORY.
This coverage applies only to accidents which occur during the policy period and within the United States of America, its territories and possessions or Canada.

# SECTION III - PHYSICAL DAMAGE COVERAGES
## Your Protection For Loss or Damage To Your Car

**DEFINITIONS**
The definitions of the terms *auto business*, *farm auto*, *private passenger auto*, *relative*, *temporary substitute auto*, *utility auto*, *you*, *non-owned auto*, *war*, *personal vehicle sharing program*, *ride-sharing* and *transportation network company* under Section I apply to Section III also. Under this Section, the following special definitions apply:

1. *Collision* means *loss* caused by upset of the covered auto or its *collision* with another object, including an attached vehicle.
   *Losses* caused by the following are *comprehensive* losses:
   (a) missiles;
   (b) falling objects;
   (c) fire;
   (d) lightning;
   (e) theft;
   (f) larceny;
   (g) explosion;
   (h) earthquake;
   (i) windstorm;
   (j) hail;
   (k) water;
   (l) flood;
   (m) malicious mischief;
   (n) vandalism;
   (o) riot;
   (p) civil commotion; or
   (q) colliding with a bird or animal.

2. *Insured* means:
   (a) regarding the *owned auto*:
       (i) *you* and *your relatives*;
       (ii) a person or organization maintaining, using or having custody of the auto with *your* permission, if his use is within the scope of that permission.
   (b) regarding a *non-owned auto*:
       *you* and *your relatives*, using the auto, if the actual operation or use is with the permission or reasonably believed to be with the permission of the owner and within the scope of that permission.

3. *Loss* means direct and accidental loss of or damage to:
   (a) the auto, including its equipment; or
   (b) other insured property.

4. *Owned auto* means:
   (a) any vehicle described in this policy for which a specific premium charge indicates there is coverage;
   (b) a *private passenger auto*, *farm auto*, *utility auto*, or a *trailer*, ownership of which is acquired by *you* during the policy period; if:
       (i) it replaces an *owned auto* as described in (a) above; or
       (ii) we insure all *private passenger autos*, *farm autos*, *utility autos*, and *trailers* owned or leased by *you* on the date of such acquisition and *you* request us to add it to the policy within 30 days afterward;
   (c) a *temporary substitute auto*.

5. *Trailer* means a trailer designed for use with a *private passenger auto* and not used as a home, residence, office, store, display or passenger vehicle. *Trailer* does not mean a trailer with built-in sleeping facilities designed for recreational or camping use.

6. *Actual cash value* is the replacement cost of the auto or property less *depreciation* or *betterment*.

7. *Depreciation* means a decrease or loss in value to the auto or property because of use, disuse, physical wear and tear, age, outdatedness, or other causes.

8. *Betterment* is improvement of the auto or property to a value greater than its pre-loss condition.

9. *Custom parts or equipment* means paint, equipment, devices, accessories, enhancements, and changes, other than those which are original manufacturer installed, which:

(a) are permanently installed or attached; or

(b) alter the appearance or performance of a vehicle. This includes any electronic equipment, antennas, and other devices used exclusively to send or receive audio, visual, or data signals, or to play back recorded media, other than those which are original manufacturer installed, that are permanently installed in the **owned auto** or a newly acquired vehicle using bolts or brackets, including slide-out brackets.

## LOSSES WE WILL PAY

### Comprehensive (Excluding *Collision*)

1. We will pay for **loss** caused other than by **collision**, to the **owned auto** or **non-owned auto**, less any deductible shown in the Declarations. This includes breakage of glass.

   At the option of the **insured**, breakage of glass caused by **collision** may be paid under the collision coverage, if included in the policy.

2. We will pay, up to $200 per occurrence, less any deductible shown in the Declarations, for **loss** to personal effects due to:

   (a) fire;
   (b) lightning;
   (c) flood;
   (d) falling objects;
   (e) earthquake;
   (f) explosion; or
   (g) theft of the entire motor vehicle.

   The property must be owned by **you** or a **relative**, and must be in or upon an **owned auto**.

3. **Losses** arising out of a single occurrence shall be subject to no more than one deductible.

### Collision

1. We will pay for **collision loss** to the **owned auto** or **non-owned auto** for the amount of each **loss** less the applicable deductible.

2. We will pay up to $200 per occurrence, less the applicable deductible, for **loss** to personal effects due to a **collision**. The property must be owned by **you** or a **relative**, and must be in or upon an **owned auto**.

3. **Losses** arising out of a single occurrence shall be subject to no more than one deductible.

## ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE PHYSICAL DAMAGE COVERAGES

1. We will reimburse the **insured** for transportation expenses incurred during the period beginning 48 hours after a theft of the entire auto covered by comprehensive coverage under this policy has been reported to us and the police. Reimbursement ends when the auto is returned to use or we pay the **loss**.

   Reimbursement will not exceed $25 per day, or $750 per **loss.**

2. We will pay general average and salvage charges for which the **insured** becomes legally liable when the auto is being transported.

## EXCLUSIONS

### When These Coverages Do Not Apply

1. We do not cover **loss** to an auto:

   (a) used to carry persons or property for compensation or a fee, including but not limited to the delivery of food or any other products; or

   (b) while being used for **ride-sharing**.

   However, a vehicle used in an ordinary car pool is covered. An ordinary car pool is one where:

   (i) an **insured** receives no payment for using a vehicle for a car pool ride; or

   (ii) an **insured** received only reimbursement for expenses for using a vehicle for a car pool ride, the reimbursement an **insured** receives for providing the car pool ride does not exceed the reasonable cost of gas and depreciation for the distance traveled, and the reimbursement received by an **insured** is not required to be reported for income tax purposes.

2. There is no coverage under this Section for any person or organization while any motor vehicle is operated, maintained or used as part of personal motor vehicle sharing facilitated by a **personal vehicle sharing program.**

3. We do not cover **loss** due to **war**.

4. We do not cover **loss** to a **non-owned auto** when used by the **insured** in the **auto business**.

5. We do not cover **loss** caused by and limited to wear and tear, freezing, mechanical or electrical breakdown or failure, unless that damage results from a covered theft.

6. We do not cover tires when only they are damaged by **collision**.

7. We do not cover **loss** due to radioactivity.

8. We do not cover **loss** of or damage to any tape, wire, record disc or other medium for use with a device designed for the recording and/or reproduction of sound.

9. We do not cover **trailers** when used for business or commercial purposes with vehicles other than **private passenger autos**, **farm autos**, or **utility autos**.

10. We do not cover **loss** to any radar or laser detector.

11. We do not cover **loss** for **custom parts or equipment**, in excess of $1,000, unless the existence of those **custom parts or equipment** has been previously reported to us and an endorsement to the policy has been added.

12. There is no coverage for any liability assumed under any contract or agreement.

13. We do not cover any **loss** or damage resulting from:
    (a) The acquisition of a stolen vehicle;
    (b) Any governmental, legal or other action to return a vehicle to its legal, equitable, or beneficial owner, or anyone claiming an ownership interest in the vehicle; or
    (c) Any confiscation, seizure or impoundment of a vehicle by governmental authorities.
    (d) The sale of an **owned auto**.

14. We do not cover the destruction, impoundment, confiscation or seizure of a vehicle by governmental or civil authorities due to its use by **you**, a **relative** or a permissive user of the vehicle in illegal activity.

15. We do not cover any **loss** sustained while operating or using:
    (a) a motor vehicle in or preparing for any racing, speed or demolition contest or stunting activity of any nature, whether or not prearranged or organized; or
    (b) a motor vehicle on a track designed primarily for racing or high speed driving. This does not apply if the vehicle is being used in connection with an activity other than racing, high speed driving, or any competitive driving.

## LIMIT OF LIABILITY

The limit of our liability for **loss**:

1. is the **actual cash value** of the property at the time of **loss**;

2. will not exceed the prevailing competitive price to repair or replace the property at the time of **loss**, or any of its parts, including parts from non-original equipment manufacturers, with other of like kind and quality and will not include compensation for any diminution of value claimed to result from the **loss**. Although **you** have the right to choose any repair facility or location, the limit of liability for repair or replacement of such property is the prevailing competitive price, which is the price we can secure from a competent and conveniently located repair facility. At **your** request, we will identify a repair facility that will perform the repairs at the prevailing competitive price;

3. to personal effects arising out of one occurrence is $200;

4. to a **trailer** not owned by **you** is $500;

5. for **custom parts or equipment** is limited to the **actual cash value** of the **custom parts or equipment**, not to exceed the **actual cash value** of the vehicle. However, the most we will pay for **loss** to **custom parts or equipment** is $1,000, unless the existence of those **custom parts or equipment** has been previously reported to us and an endorsement to the policy has been added.

    **Actual cash value** of property will be determined at the time of the **loss** and will include an adjustment for **depreciation**/**betterment** and for the physical condition of the property.

## OTHER INSURANCE

If the **insured** has other insurance against a loss covered by Section III of this policy, we will not owe more than our pro rata share of the total coverage available.

Any insurance we provide for a vehicle **you** do not own shall be excess over any other valid or collectible insurance, self- insurance, or bond; except for a motor vehicle provided by a motor vehicle dealer when an **insured** has custody of or is operating that motor vehicle, while the **insured's** motor vehicle is being transported, serviced, repaired or inspected by the motor vehicle dealer. This exception only applies to the loan of a motor vehicle by a motor vehicle dealer that occurs without financial remuneration in the form of a fee, rental or lease charge paid directly by the **insured** operating the motor vehicle.

## CONDITIONS

The following conditions apply only to the Physical Damage Coverages:

1. NOTICE

    As soon as possible after a **loss**, written notice must be given to us or our authorized agent stating:
    (a) the identity of the **insured**;
    (b) a description of the auto or **trailer**;

(c)  the time, place and details of the **loss**; and

(d)  the names and addresses of any witnesses.

In case of theft, the **insured** must promptly notify the police.

In the case of theft of the entire vehicle, the **insured** must promptly notify the police that the vehicle was stolen. To be eligible as a covered **loss**, the police report must acknowledge and classify the report as theft of a motor vehicle. The **insured** must cooperate fully: with the police investigation, with the claim investigation, and with the prosecution of any person(s) charged with theft and any civil suit brought by us against the person(s) responsible to recover for the **loss**.

**2.**  TWO OR MORE AUTOS

If this policy covers two or more autos or **trailers**, the limit of coverage and any deductibles apply separately to each.

**3.**  ASSISTANCE AND COOPERATION OF THE INSURED

The **insured** will cooperate and assist us, if requested:

(a)  in the investigation of the **loss**;

(b)  in making settlements;

(c)  in the conduct of suits;

(d)  in enforcing any right of subrogation against any legally responsible person or organization;

(e)  at trials and hearings;

(f)  in securing and giving evidence; and

(g)  by obtaining the attendance of witnesses.

**4.**  ACTION AGAINST US

Suit will not lie against us unless the policy terms have been complied with and until 30 days after proof of loss is filed and the amount of **loss** is determined. The suit shall be filed in the court of competent jurisdiction in the county or federal district where the **insured** resided at the time of the accident. If we retain salvage, we have no duty to preserve or otherwise retain the salvage for any purpose, including as evidence for any civil or criminal proceeding. If **you** ask us immediately after a **loss** to preserve the salvage for inspection, we will do so for a period not to exceed 30 days. **You** may purchase the salvage from us if **you** wish.

**5.**  INSURED'S DUTIES IN EVENT OF LOSS

In the event of **loss** the **insured** will:

(a)  Protect the auto, whether or not the **loss** is covered by this policy. Further **loss** due to the **insured's** failure to protect the auto will not be covered. Reasonable expenses incurred for this protection will be paid by us.

(b)  File with us, within 91 days after **loss**, his sworn proof of loss including all information we may reasonably require.

(c)  At our request, the **insured** will exhibit the damaged property.

**6.**  APPRAISAL

If we and the **insured** do not agree on the amount of **loss**, either may, within 60 days after proof of loss is filed, demand an appraisal of the **loss**. In that event, we and the **insured** will each select a competent appraiser. The appraisers will select a competent and disinterested umpire. The appraisers will state separately the **actual cash value** and the amount of the **loss**. If they fail to award in writing of any two will determine the amount of the **loss**. We and the **insured** will each pay his chosen appraiser and will bear equally the other expenses of the appraisal and the umpire.

We will not waive our rights by any of our acts relating to appraisal.

**7.**  PAYMENT OF LOSS

We may at our option:

(a)  pay for the **loss**; or

(b)  repair or replace the damaged or stolen property.

At any time before the **loss** is paid or the property replaced, we may return any stolen property to **you** or to the address shown in the Declarations at our expense with payment for covered damage. We may take all or part of the property at the agreed or appraised value, but there will be no abandonment to us. We may settle claims for **loss** either with the **insured** or the owner of the property.

**8.**  NO BENEFIT TO BAILEE

This insurance does not apply directly or indirectly to the benefit of a carrier or other bailee for hire liable for the **loss** of the auto.

9. SUBROGATION

When payment is made under this policy, we will be subrogated to all the *insured's* rights of recovery against others. The *insured* will help us to enforce these rights. The *insured* will do nothing after *loss* to prejudice these rights.

This means we will have the right to sue for or otherwise recover the *loss* from anyone else who may be held responsible.

10. ASSIGNMENT

With respect to Section III - Physical Damages Coverage, an Assignment of interest under this policy will not bind us without our consent. Any nonconforming assignment shall be void and invalid. Moreover, the assignee of a nonconforming assignment shall acquire no rights under this contract and we shall not recognize any such assignment.

# SECTION IV - UNINSURED AND UNDERINSURED MOTORISTS COVERAGE
## Protection For You and Your Passengers For Injuries Caused By
## Uninsured, Underinsured and Hit and Run Motorists

**THIS POLICY DOES NOT PROVIDE UNINSURED/UNDERINSURED MOTORISTS BENEFITS.**
**Uninsured/underinsured motorist benefits are designed to provide protection when  *you* or *your* family are involved in an accident with an uninsured/underinsured motorist** .

UNLESS AMENDED WITH THE STACKED OR NON-STACKED UNINSURED/UNDERINSURED AMENDMENT, YOU ELECTED NOT TO PURCHASE CERTAIN VALUABLE COVERAGE, WHICH WOULD HAVE PROTECTED YOU AND YOUR FAMILY WHEN INVOLVED, IN A COVERED LOSS WITH AN UNINSURED/UNDERINSURED MOTORIST.

# SECTION V - GENERAL CONDITIONS
## These conditions apply to all Coverages in this policy.

1. TERRITORY

This policy applies only to accidents, occurrences or *losses* during the policy period within the United States of America, its territories or possessions, or Canada or when the auto is being transported between ports thereof.

2. PREMIUM

When *you* dispose of, acquire ownership of, or replace a *private passenger auto*, *farm auto*, or *utility auto*, any necessary premium adjustment will be made as of the date of the change and in accordance with our manuals.

3. CHANGES

The terms and provisions of this policy cannot be waived or changed, except by an endorsement issued to form a part of this policy.

We may revise this policy during its term to provide more coverage without an increase in premium. If we do so,   *your* policy will automatically include the broader coverage when effective in  *your* state.

The premium for each auto is based on the information we have in  *your* file. *You* agree:

(a) that we may adjust *your* policy premiums during the policy term if any of this information on which the premiums are based is incorrect, incomplete or changed.

(b) that *you* will cooperate with us in determining if this information is correct and complete.

(c) that *you* will notify us of any changes in this information.

Any calculation or recalculation of  *your* premium or changes in *your* coverage will be based on the rules, rates and forms on file, if required, for our use in  *your* state.

4. ASSIGNMENT

Assignment of interest under this policy will not bind us without our consent.

If *you* die, this policy will cover:

(a) *your* surviving spouse;

(b) the executor or administrator of  *your* estate, but only while acting within the scope of his duties;

(c) any person having proper temporary custody of the  *owned auto*, as an *insured*, until the appointment and qualification of the executor or administrator of  *your* estate; and

(d) under the medical payments coverage, a person who was a *relative* at the time of  *your* death.

**5.** POLICY PERIOD

Unless otherwise cancelled, this policy will expire as shown in the Declarations. But it may be continued by our offer to renew and *your* acceptance by payment of the required renewal premium prior to the expiration date. Each period will begin and expire as stated in the Declarations.

**6.** CANCELLATION BY THE INSURED

*You* may cancel this policy by providing notice to us stating when, after the notice, cancellation will be effective. If this policy is canceled, *you* may be entitled to a premium refund. The premium refund, if any, will be computed according to our manuals.

**7.** CANCELLATION BY US

We may cancel this policy by mailing to *you*, at the address shown in this policy, written notice stating when the cancellation will be effective.

We will mail notice of cancellation:

(a) 15 days in advance of the date of cancellation for cancellation for non-payment of premium or any of its installments when due;

(b) 15 days in advance of the date of cancellation if the driver's license or motor vehicle registration of the named insured has been under suspension or revocation during the policy period;

(c) 60 days in advance of the date of cancellation where a named insured has concealed a material fact, or has made a material allegation contrary to fact, or has made a misrepresentation of a material fact and such concealment, allegation or misrepresentation was material to the acceptance of the risk by us.

However, if this policy has been in effect less than 60 days and is not a renewal policy, we may also cancel for any reason by mailing written notice of cancellation to *you* 15 days in advance of the date of cancellation.

The mailing or delivery of the above notice will be sufficient proof of notice. The policy will cease to be in effect as of the date and hour stated in the notice.

If this policy is cancelled, *you* may be entitled to a premium refund. The premium refund, if any, will be computed according to our manuals. Payment or tender of unearned premium is not a condition of cancellation.

**8.** RENEWAL

We agree that we will not refuse to renew or continue this policy unless a written notice of our refusal to renew or continue is mailed to *you*, at the address shown in this policy, at least 60 days prior to the expiration date for all reasons, except where the driver's license or motor vehicle registration of the named insured has been under suspension or revocation during the policy period in which case 15 days will apply.  The mailing or delivery of this notice will be sufficient proof of notice. Notice will not be required if:

(a) *you* do not pay the premium as we require to renew this policy;

(b) we have expressed our willingness to renew by issuing or offering to issue a renewal policy, certificate or other evidence of renewal, or have manifested our intention by any other means; or

(c) *you* have informed us or our agent that *you* wish the policy to be cancelled or not renewed.

**9.** DIVIDEND PROVISION

*You* are entitled to share in a distribution of the surplus of the company as determined by its Board of Directors from time to time.

**10.** DECLARATIONS

By accepting this policy, *you* agree that:

(a) the statements in *your* application and in the Declarations are *your* agreements and representations;

(b) this policy is issued in reliance upon the truth of these representations; and

(c) this policy, along with the application and declaration sheet, embodies all agreements relating to this insurance. The terms of this policy cannot be changed orally.

**11.** FRAUD AND MISREPRESENTATION

Coverage is not provided to any person who knowingly conceals or misrepresents any material fact or circumstance relating to this insurance:

(a) at the time application is made; or

(b) at any time during the policy period; or

(c) in connection with the presentation or settlement of a claim.

**12.** EXAMINATION UNDER OATH

The **insured** or any other person seeking coverage under this policy must submit to examination under oath by any person named by us when and as often as we may require.

**13.** TERMS OF POLICY CONFORMED TO STATUTES

Any terms of this policy in conflict with the statutes of Pennsylvania are amended to conform to those statutes.

**14.** DISPOSAL OF VEHICLE

If **you** relinquish possession of a leased vehicle or if **you** sell or relinquish ownership of an **owned auto**, any coverage provided by this policy for that vehicle will terminate on the date   **you** do so.

**15.** CHOICE OF LAW

The policy and any amendment(s) and endorsement(s) are to be interpreted pursuant to the laws of the state of Pennsylvania.

# SECTION VI - AMENDMENTS AND ENDORSEMENTS
### SPECIAL ENDORSEMENT UNITED STATES GOVERNMENT EMPLOYEES

A.   Under the Property Damage coverage of Section I, we provide coverage to United States Government employees, civilian or military, using

1.   Motor vehicles owned or leased by the United States Government or any of its agencies, or
2.   Rented motor vehicles used for United States Government business,

when such use is with the permission of the United States Government. Subject to the limits described in paragraph B. below, we will pay sums **you** are legally obligated to pay for damage to these vehicles.

B.   The following limits apply to this coverage:

1.   A $100 deductible applies to each occurrence.
2.   For vehicles described in A.1 above, our liability shall not exceed the lesser of the following:
    a.   The **actual cash value** of the property at the time of the occurrence; or
    b.   The cost to repair or replace the property, or any of its parts with other of like kind and quality; or
    c.   Two months basic pay of the **insured**; or
    d.   The limit of Property Damage liability coverage stated in the Declarations.
3.   For vehicles described in A.2. above, our liability shall not exceed the lesser of the following:
    a.   The **actual cash value** of the property at the time of the occurrence; or
    b.   The cost to repair or replace the property, or any of its parts with other of like kind and quality; or
    c.   The limit of Property Damage liability coverage stated in the Declarations.

This insurance is excess over other valid and collectible insurance.

W. C. E. Robinson
Secretary

Todd A. Combs
President



# Automobile Policy Amendment
## Pennsylvania

*Your* policy is amended as follows:

## SECTION I-LIABILITY COVERAGES
## DEFINITIONS

The definition of **utility auto** is revised as follows:

11. **Utility auto** means a vehicle, other than a **farm auto**, with a gross vehicle weight rating of 15,000 pounds or less of the pick-up body, van or panel truck type not used for commercial purposes.

## SECTION II - FIRST PARTY BENEFITS
## CONDITIONS

The second paragraph under **CONDITION 3.**, MEDICAL REPORTS; PROOF OF CLAIM:, is revised as follows:

The **eligible person** may, if asked, submit to mental and physical examinations by physicians selected by us when and as often as we may reasonably require. We will pay the cost of such examinations.

## SECTION III - PHYSICAL DAMAGE COVERAGES
## CONDITIONS

**CONDITION 6.**, APPRAISAL, is revised as follows:

If we and the **insured** do not agree on the amount of **loss**, either may, within 60 days after proof of loss is filed, demand an appraisal of the **loss**. In that event, we and the **insured** will each select a competent appraiser. The appraisers will select a competent and disinterested umpire. The appraisers will state separately the **actual cash value** and the amount of the **loss**. If they fail to agree, they will submit the dispute to the umpire. An award in writing of any two will determine the amount of the **loss**. We and the **insured** will each pay his chosen appraiser and will bear equally the other expenses of the appraisal and the umpire. We will not waive our rights by any of our acts relating to appraisal.

We affirm this amendment.

W. C. E. Robinson
Secretary

Todd A. Combs
President

ENDORSEMENT

## LOSS PAYABLE CLAUSE

The Policy Number and Effective Date need be completed only when this endorsement is issued subsequent to preparation of the policy.

Policy Number:

Effective Date:

Any covered **loss** under the Physical Damage Coverages of the policy will be paid jointly to the **insured** and the Lienholder in the Declarations. We may settle a claim at our option by separate payment to the **insured** and the Lienholder. The Lienholder's interest will not be protected:

1. When fraud, misrepresentation, material omission, or intentional damage has knowingly been committed by or at the direction of any **insured**; or

2. In any case of conversion, embezzlement, secretion, or intentional damage to the vehicle(s) by or at the direction of any **insured**, or any owner of the vehicle(s); or

3. For any **loss** or damage caused by, or reasonably expected to result from, a criminal act or omission of any **insured** or any owner of the vehicle(s). This applies regardless of whether any **insured**, or any owner of the vehicle(s) is actually charged with, or convicted of a crime. For the purpose of this clause, criminal acts or omissions do not include traffic violations.

The Lienholder has no greater rights under the provisions of the policy than any **insured**.

The Lienholder must notify us if they become aware of any increased hazard or change of ownership of the vehicle(s) or they will lose all rights under this policy.

If any **insured** fails to file with us a Proof of Loss within 91 days after the **loss**, the Lienholder must do so within the following 60 days.

Whenever we pay the Lienholder, we shall be subrogated to the Lienholder's rights of recovery to the extent of our payment to the Lienholder. If the policy is in effect as to the Lienholder but has been canceled as to any **insured**, the Lienholder must assign the loan to us to the extent of our payment, if we ask.

We will notify the Lienholder at least 5 days and not less than the notice period required by law before we cancel their interest in the policy.

This endorsement forms a part of **your** policy. It is effective at 12:01 A.M. local time at **your** address on the effective date shown above.



**Automobile Policy Amendment**

**Underinsured Motorists Coverage**
**Pennsylvania (Non-Stacked Limits)**

Policy Number:

Section IV of *your* policy is replaced by the following:

**UNDERINSURED MOTORISTS COVERAGE**

Protection for *you* and *your* passengers for injuries caused by Underinsured Motorists.

**DEFINITIONS**

The definitions of terms in Section I apply to this coverage. The following definitions apply only to this coverage.

1. ***Household Member*** means a person residing in *your* household who is:
   (a) ***Your*** spouse; or
   (b) A ***relative***; or
   (c) A minor in your custody or the custody of a ***relative***.

2. ***Insured*** means:
   (a) ***You***;
   (b) A ***household member***
   (c) Any other person while ***occupying*** an ***owned auto***;
   (d) Any person who is entitled to recover damages because of ***bodily injury*** sustained by an ***insured*** under (a), (b) and (c) above.
   If there is more than one ***insured***, our limits of liability will not be increased.

3. ***Insured Motor Vehicle*** is a motor vehicle:
   (a) Described in the Declarations and covered by the bodily injury liability coverage of this policy;
   (b) Temporarily substituted for an ***insured motor vehicle*** when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction;
   (c) Operated by ***you*** or ***your*** spouse if a resident of the same household. But the term ***insured motor vehicle*** does not include:
       (i) A motor vehicle used to carry passengers or goods for hire except in a carpool;
       (ii) A motor vehicle being used without the owner's permission; or
       (iii) Under subparagraphs b) and c) above, a motor vehicle owned by or furnished for the regular use of an ***insured***.

4. ***Limited Tort Option*** means the right to seek recovery for economic loss sustained in a motor vehicle accident for which another person is responsible. Recovery is excluded for ***noneconomic loss.***

5. ***Noneconomic Loss*** means pain and suffering and other non-monetary damages.

6. ***Occupying*** means in, upon, entering into or alighting from.

7. ***State*** includes the District of Columbia, the territories and possessions of the United States, and the Provinces of Canada.

8. ***Underinsured Motor Vehicle*** means:
   a motor vehicle for which the limits of available liability insurance and self-insurance are insufficient to pay losses and damages.

   The term ***Underinsured Motor Vehicle*** does not include:
   (a) An ***insured motor vehicle*** under the liability coverage of this policy;
   (b) A land motor vehicle or ***trailer*** operated on rails or crawler-treads or located for use as a residence or premises; and
   (c) A farm-type tractor or equipment designed for use principally off public roads, except while used upon public roads.

**LOSSES WE PAY**

Under this coverage, we will pay damages for **bodily injury** caused by an accident which the **insured** is legally entitled to recover from the owner or operator of an **underinsured motor vehicle** arising out of the ownership, maintenance or use of that motor vehicle. The **bodily injury** must be sustained by the **insured**.

The amount of the **insured's** recovery for these damages will be determined by agreement between the **insured** or his representative and us. If any **insured** making claim under this coverage and we do not agree:

1. Whether that person is legally entitled to recover damages from the owner or operator of an **underinsured motor vehicle**; or

2. As to the amount of damages; or

3. Whether that person is entitled to coverage under this policy;

then the dispute shall be resolved in a court of competent jurisdiction in the county or federal district where the **insured** resided at the time of the accident. Should a dispute proceed to litigation, we will be obligated to pay no more than the applicable policy limits for this coverage. Upon the written agreement of all parties, the dispute under 1., 2. or 3. above, may be submitted to arbitration. However, neither the **insured** nor we will be required to arbitrate unless both parties voluntarily agree in writing to submit the matter to arbitration.

An **insured** may not recover damages under both the Uninsured Motorists Coverage and the Underinsured Motorists Coverage for the same accident.

**EXCLUSIONS**

**When This Coverage Does Not Apply**

1. This coverage does not apply to **bodily injury** to an **insured** if the **insured** or his legal representative has made a settlement or has been awarded a judgment of his claim without our prior written consent.

2. This coverage will not benefit any self-insurer or disability benefits insurer.

3. We do not cover the United States of America or any of its agencies as an **insured**, a third party beneficiary or otherwise.

4. We do not cover any person while **occupying** a vehicle described in the Declarations on which only Physical Damage Coverages are carried.

5. We do not cover damages for **noneconomic loss** if an **insured** has elected the **Limited Tort Option** unless that **insured** sustains a serious injury as is defined by MVFRL 75 Pa. C.S. §1702.

6. Regardless of any other provision of this policy, there is no coverage for punitive or exemplary damages.

7. This coverage does not apply to the use of any vehicle by an **insured** without permission from the owner.

8. This coverage does not apply when using or **occupying** a motor vehicle furnished for the regular use of **you, your** spouse, or a **relative** who resides in **your** household, which is not insured under this policy.

9. This coverage does not apply to any liability assumed under any contract or agreement.

10. This coverage does not apply to damage caused by an **insured's**:
    (a) participation in or preparation for any racing, speed or demolition contest or stunting activity of any nature, whether or not prearranged or organized; or
    (b) operation or use of a motor vehicle on a track designed primarily for racing or high speed driving. This does not apply if the vehicle is being used in connection with an activity other than racing, high speed driving or any competitive driving.

11. This coverage does not apply to any person or organization while any motor vehicle is operated, maintained or used as part of personal vehicle sharing facilitated by a **personal vehicle sharing program.**

12. This coverage does not apply to **bodily injury** for any person or organization while any vehicle:
    (a) is being used to carry persons for compensation or a fee; or
    (b) is being used for **ride-sharing**.
    However, this exclusion will not apply to ordinary car pools. An ordinary car pool is one where:
    (i) An **insured** receives no payment for using a vehicle for a car pool ride; or
    (ii) An **insured** receives only reimbursement for expenses for using a vehicle for a car pool ride, the reimbursement an **insured** receives for providing the car pool ride does not exceed the reasonable cost of gas and depreciation for the distance traveled, and the reimbursement received by an **insured** is not required to be reported for income tax purposes.
    This exclusion does not apply to **you** or any **relative** while a passenger and not operating the motor vehicle.

**LIMIT OF LIABILITY**

Regardless of the number of autos or *trailers* to which this policy applies:

1. The most we will pay for all damages including those for care or loss of services due to *bodily injury* to one person in any one accident is the limit shown in the Declarations for "each person" applicable to the vehicle that the *insured* was *occupying* at the time of the accident.

2. The most we will pay for all damages including those for care or loss of services due to *bodily injury* to two or more persons in any one accident is the limit shown in the Declarations for "each accident" applicable to the vehicle that the *insureds* were *occupying* at the time of the accident.

3. When coverage is afforded to two or more autos, the limits of liability shall apply separately to each auto as stated in the Declarations but shall not exceed the highest limit of liability applicable to one auto.

   If separate policies with us are in effect for *you* or any *household member*, they may not be combined to increase the limit of our liability for a loss.

4. No *insured* may:
   (a) Receive duplicate payments for the same elements of loss; or
   (b) Recover damages from both Uninsured Motorists Coverage and the Underinsured Motorists Coverage for the same accident.

5. The amount paid under this coverage will be reduced by all amounts paid or payable by or for all persons or organizations liable for the injury.

6. Any payment made under this coverage will reduce the amount an *insured* is entitled to recover for the same damages under the Bodily Injury Coverage.

7. Our limit of liability under this Underinsured Motorist Coverage as described in 1. or 2. above shall be reduced by any amount the *insured* is entitled to recover under Section I - Liability Coverage of this policy.

**OTHER INSURANCE**

If there is other insurance applicable to a loss we have paid for, we are entitled to recover any remaining pro rata share of the benefits paid and the costs of processing the claim. Our pro rata share is the proportion our limit of liability bears to the total of all applicable limits.

Any insurance we provide for a vehicle *you* do not own is excess over any other collectible insurance, self-insurance, or bond.

**TRUST AGREEMENT**

Whenever we owe payment under this coverage:

1. We will be entitled to repayment of that amount out of any settlement or judgment after the *insured* has recovered his damages from any person or organization legally responsible for the *bodily injury.*

2. The *insured* will hold in trust for our benefit all rights of recovery which he may have against any person or organization responsible for these damages. He will do whatever is necessary to secure all rights of recovery and will do nothing after the loss to prejudice these rights.

3. At our request, the *insured*, in his own name, will take appropriate actions necessary to recover payment for damages from the legally responsible person or organization. We will be reimbursed out of the recovery for our expenses, costs and attorneys' fees if we initiate the action.

4. The *insured* will execute and furnish us with any needed documents to secure his and our rights and obligations.

**CONDITIONS**

The following conditions apply only to this coverage:

1. NOTICE

   As soon as possible after an accident, notice must be given to us or our authorized agent stating:
   (a) The identity of the *insured*;
   (b) The time, place and details of the accident; and
   (c) The name and addresses of the injured, and of any witnesses.

   If the *insured* or his legal representative files suit before we make settlement under this coverage, he must immediately provide us with a copy of the pleadings.

2. ASSISTANCE AND COOPERATION OF THE INSURED

   The *insured* must take any action necessary to preserve his recovery rights against any allegedly legally responsible person or organization. We may require the *insured* to make that person or organization a defendant in any action against us.

3. ACTION AGAINST US

   Suit will not lie against us unless the *insured* and his legal representative have fully complied with all the policy terms.

**4.** PROOF OF CLAIM-MEDICAL REPORTS

As soon as possible, the *insured* or other persons making claim must give us written proof of claim, under oath if required. This will include details of the nature and extent of injuries, treatment, and other facts which may affect the amount payable.

Proof of claim must be made on forms furnished by us unless we have not furnished these forms within 15 days after receiving notice of claim.

The *insured* will submit to examination by doctors chosen by us, at our expense, as we may reasonably require. In the event of the *insured's* incapacity or death, his legal representative must, at our request, authorize us to obtain medical reports and copies of records.

**5.** PAYMENT OF LOSS

Any amount due is payable:

(a) To the *insured* or his authorized representative;

(b) If the *insured* is a minor to his parent or guardian; or

(c) If the *insured* is deceased, to his surviving spouse; otherwise

(d) To a person authorized by law to receive the payment, or to a person legally entitled to recover payment for the damages.

We may at our option, pay any amount due in accordance with (d) above.

We affirm this amendment.

W. C. E. Robinson
Secretary

Todd A. Combs
President



# Automobile Policy Amendment
## Emergency Road Service Coverage

Policy Number:

***Your*** policy provisions are amended as follows:

**SECTION III**

**PHYSICAL DAMAGE COVERAGES**

**Emergency Road Service**

We will pay reasonable expenses an ***insured*** incurs for the ***owned*** or ***non-owned auto***, for:

1. mechanical labor up to one hour at the place of breakdown;
2. lockout services up to $100 per lockout if keys to the auto are lost, broken or accidentally locked in the auto;
3. if it will not run, towing to the **nearest** repair facility where the necessary repairs can be made;
4. towing it out if it is stuck on or immediately next to a public highway;
5. delivery of gas, oil, loaned battery, or change of tire.  WE DO NOT PAY FOR THE COST OF THE GAS, OIL, LOANED BATTERY, OR TIRE(S).

**OBTAINING SERVICE UNDER THIS AMENDMENT**

***You*** may secure service under this amendment in the following manner:

**SIGN AND DRIVE**

The first method, called sign and drive, features a toll-free number in which the ***insured*** calls a GEICO Emergency Road Service representative who will dispatch a service vendor. Upon verification of Emergency Road Service (ERS) coverage, reasonable and necessary charges for covered services provided will be automatically billed to the Company by the Service vendor.  The ***insured*** need only sign a receipt at the time of service which authorizes the company to directly pay the service vendor. Any additional mileage, other fees not specifically addressed above, or lockout services in excess of $100 will be at the ***insured's*** expense.

**HIRED SERVICES**

The second method occurs when the ***insured*** does not use the sign and drive feature described above and hires services without prior approval from the Emergency Road Service (ERS) Department. Upon verification of Emergency Road Service (ERS) coverage, for covered services provided, up to a limit of $50 will apply. Lockout services are limited to $100. Requests for reimbursement must be accompanied by an original itemized receipt and must be submitted within 60 days of service.

There will be a limit of one reimbursement per disablement.

We affirm this amendment.


W. C. E. Robinson
Secretary

Todd A. Combs
President

A115 (04-08)

 **GEICO**®

# Automobile Policy Endorsement
## Rental Reimbursement Endorsement

Policy Number:

We agree with **you** that the policy is amended as follows:
**SECTION III - PHYSICAL DAMAGE COVERAGES** The
following coverage is added:

### Coverage-Rental Reimbursement

When there is a **loss** to an **owned auto** for which a specific premium charge indicates that rental reimbursement coverage is afforded:

We will reimburse the **insured** toward costs the **insured** incurs to rent an auto.  Reimbursement will not exceed the limits described in the declarations and payment will be limited to a reasonable and necessary period of time required to repair or replace the **owned auto**. This coverage applies only if:

1. The **owned auto** is withdrawn from use for more than 24 consecutive hours, and
2. The **loss** to the **owned auto** is covered under comprehensive or collision coverage of this policy.

When there is a total theft of the entire auto, we will reimburse the  **insured** toward costs the **insured** incurs to rent an auto, subject to the following limitations:

1. This coverage will reimburse the **insured** for reasonable rental expenses beginning 48 hours after a theft of the entire vehicle covered under the comprehensive coverage of this policy; and
2. This coverage may be used to reimburse reasonable rental expenses in excess of those provided by Section III of the policy if and to the extent the coverage limits under rental reimbursement exceed those provided in Section III of the policy.  In that event, the amount payable under this endorsement is the amount by which this coverage exceeds those described in Section III of the policy; and
3. Subject to number 2 above, in no event shall the total amount payable under both this coverage and the supplemental coverage in Section III of the policy exceed the daily limit of coverage provided by this endorsement.

Reimbursement for rental charges shall end the earliest of when the  **owned auto** has been:

1. Returned to **you;** or
2. Repaired; or
3. Replaced; or
4. Deemed a total loss by us:
   (a)  Seventy-two (72) hours after we pay the applicable limit of liability under Section III; or
   (b)  Seventy-two (72) hours after our initial settlement offer;
   whichever comes first.

However, when there is a total theft of an **owned auto**, reimbursement for rental charges shall end the earliest of:

1. The date the auto is returned to use if the vehicle is recovered before payment of the total theft claim to  **you** or the owner of the vehicle; or if the vehicle is not recovered,
2. Seventy-two (72) hours after our initial settlement offer of the  **actual cash value** of the **owned auto**.
3. Seventy-two (72) hours after the failure to provide either a proof of loss or recorded statement if requested by us.

No deductible applies to this coverage.

CONDITIONS

In the case of theft of the entire auto, the **insured** must promptly notify the police that the vehicle was stolen. To be eligible as a covered **loss**, the police report must acknowledge and classify the report as theft of a motor vehicle.  The **insured** must cooperate fully: with the policy investigation, with the prosecution of any person(s) charged with theft and any civil suit brought by us against the person(s) responsible to recover for the  **loss**.

The coverage provided by this endorsement is subject to all the provisions and conditions of SECTION III of the policy.

The COMPANY affirms this endorsement.

W. C. E. Robinson
Secretary

Todd A. Combs
President



# Automobile Policy Endorsement
# Multi-Risk Physical Damage Coverage

Policy Number:

We agree with **you** as follows:

SECTION III - PHYSICAL DAMAGE COVERAGES is amended to provide Multi-Risk Physical Damage Coverages. This includes:

1. comprehensive;
2. collision; and
3. mechanical breakdown protection

This endorsement is subject to all policy conditions and definitions except as specifically modified below.

The amount of applicable deductible shown in the policy declarations shall apply to each **loss** under the Multi-Risk Coverage. A $50 deductible shall apply to glass breakage without any other damage to the auto, unless **you** carry comprehensive coverage without a deductible.

**Mechanical Breakdown**

We will pay for **loss** caused other than by **collision** or under the comprehensive coverage due to the mechanical breakdown of the **owned auto. Losses** from mechanical breakdown shall not be accumulated to reach the deductible.

**Definitions**

For the purposes of this endorsement, the following special definitions apply with respect to mechanical breakdown only:

**Loss** means all risk of physical damage to the **owned auto** or its equipment.

**Owned auto** means any vehicle described in this policy for which a specific premium charge indicates there is coverage.

**Owned auto** does not mean:
    a) a newly acquired vehicle; or
    b) a replacement vehicle; or
    c) a **temporary substitute auto.**

**Exclusions**

For the purposes of this endorsement only, with respect to Mechanical Breakdown, the following exclusion is deleted.

    We do not cover **loss** caused by and limited to wear and tear, freezing, mechanical or electrical breakdown or failure, unless that damage results from a covered theft.

The following exclusions are added:

A. Oxidation and rust damage are not covered.

B. Damage caused intentionally by **you** or any other person using an **owned auto** with **your** permission is not covered. This exclusion does not apply to an **insured** for **losses** arising out of abuse to that **insured** to the extent of the **insured's** legal interests in the covered property if the **loss** is caused by the intentional act of another **insured**. Abuse means intentionally, knowingly or recklessly causing damage to property so as to intimidate or attempt to control behavior.

C. **Loss** due to misuse, alteration, or **lack of proper maintenance** is not covered. **Proper maintenance** is the recommended vehicle maintenance as outlined in the owner's manual or recommended by the manufacturer.

D. Tire wear or other tire damage is not covered.

E. Normal wear and tear is not covered.

F. Routine maintenance services and parts are not covered. This includes; but is not limited to:
    a) engine tune up;
    b) suspension alignment;
    c) wheel balancing;
    d) filters;
    e) lubrication;
    f) engine coolant;
    g) fluids;
    h) spark or glow plugs;
    i) brake pads;
    j) brake linings; and
    k) brake shoes.

G. Any **loss** to the extent covered by warranty, recall or voluntary repair programs is not covered.

H. Any **loss** to a **non-owned auto** or to a **temporary substitute auto** is not covered.

I. Any **loss** to a newly acquired or replacement auto is not covered.

J. Any pre-existing **loss** or damage to any insured auto is not covered.

K.  Multi-Risk Coverage will either terminate when the Odometer reading exceeds 100,000 miles or when the age of the vehicle is 7 years old, whichever occurs earlier. The 7 year stipulation will only apply to vehicles that are 1996 model year and later.

**Other Insurance**

For the purposes of this endorsement only, if **you** have other insurance against a **loss** covered by mechanical breakdown protection, this policy will apply as excess insurance over such other valid and collectible insurance.

**Conditions**

For the purposes of this endorsement only, the following condition is revised with respect to mechanical breakdown coverage:

Item e) is added to 1. Notice

e)   the location of the **owned auto.**

The following condition is added with respect to mechanical breakdown coverage:

For this coverage to be applicable, repairs may not be undertaken prior to obtaining authorization from us.

We affirm this endorsement.

W. C. E. Robinson
Secretary

Todd A. Combs
President

Policy Number:



**Automobile Policy Amendment**
**Uninsured Motorists Coverage**
**Pennsylvania (Non-Stacked Limits)**

Policy Number:

Section IV of *your* policy is replaced by the following:

**UNINSURED MOTORISTS COVERAGE**

Protection for *you* and *your* passengers for injuries caused by Uninsured and Hit-and-Run Motorists.

**DEFINITIONS**

The definitions of terms in Section I apply to this coverage. The following definitions apply only to this coverage.

1. ***Hit-and-Run Motor Vehicle*** is a motor vehicle that causes an accident resulting in ***bodily injury*** to an ***insured*** and whose operator or owner is at fault and cannot be identified, provided the accident:
   (a) is reported to the police or proper governmental authority; and
   (b) the ***insured***, or someone on his behalf, files with us within 30 days, or as soon as practicable thereafter, a statement setting forth the facts of the accident and claiming that he has a cause of action for damages arising out of the accident.

2. ***Household Member*** means a person residing in ***your*** household who is:
   (a) ***Your*** spouse; or
   (b) A ***relative***; or
   (c) A minor in ***your*** custody or the custody of a ***relative***.

3. ***Insured*** means:
   (a) ***You***;
   (b) A ***household member***;
   (c) Any other person while ***occupying*** an ***owned auto***;
   (d) Any person who is entitled to recover damages because of ***bodily injury*** sustained by an ***insured*** under (a), (b) and (c) above.
   If there is more than one ***insured***, our limits of liability will not be increased.

4. ***Insured Motor Vehicle*** is a motor vehicle:
   (a) Described in the Declarations and covered by the bodily injury liability coverage of this policy;
   (b) Temporarily substituted for an ***insured motor vehicle*** when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction;
   (c) Operated by ***you*** or ***your*** spouse if a resident of the same household. But the term ***insured motor vehicle*** does not include:
      (i) A motor vehicle used to carry passengers or goods for hire except in a carpool;
      (ii) A motor vehicle being used without the owner's permission; or
      (iii) Under subparagraphs (b) and (c) above, a motor vehicle owned by or furnished for the regular use of an ***insured***.

5. ***Limited Tort Option*** means the right to seek recovery for economic loss sustained in a motor vehicle accident for which another person is responsible. Recovery is excluded for ***non-economic loss***.

6. ***Non-economic Loss*** means pain and suffering and other nonmonetary damages.

7. ***Occupying*** means in, upon, entering into or alighting from.

8. ***State*** includes the District of Columbia, the territories and possessions of the United States, and the Provinces of Canada.

9. ***Uninsured Motor Vehicle*** is:
   (a) A motor vehicle for which there is no liability insurance or self-insurance applicable at the time of the accident or loss; or
   (b) A motor vehicle whose insurer is or becomes insolvent or denies coverage; or
   (c) ***A hit-and-run motor vehicle.***
   The term ***Uninsured Motor Vehicle*** does not include:
   (a) An ***insured motor vehicle*** under the liability coverage of this policy;

(b) A land motor vehicle or *trailer* operated on rails or crawler-treads or located for use as a residence or premises; and

(c) A farm-type tractor or equipment designed for use principally off public roads, except while used upon public roads.

## LOSSES WE PAY

Under the Uninsured Motorists Coverage, we will pay damages for *bodily injury* caused by an accident which the *insured* is legally entitled to recover from the owner or operator of an *uninsured motor vehicle* arising out of the ownership, maintenance or use of that motor vehicle. The *bodily injury* must be sustained by the *insured*.

The amount of the *insured's* recovery for these damages will be determined by agreement between the *insured* or his representative and us. If any *insured* making claim under this coverage and we do not agree:

1. Whether that person is legally entitled to recover damages from the owner or operator of an *uninsured motor vehicle*; or

2. As to the amount of damages; or

3. Whether that person is entitled to coverage under this policy;

then the dispute shall be resolved in a court of competent jurisdiction in the county or federal district where the *insured* resided at the time of the accident. Should a dispute proceed to litigation, we will be obligated to pay no more than the applicable policy limits for this coverage. Upon the written agreement of all parties, the dispute under 1., 2. or 3. above, may be submitted to arbitration. However, neither the *insured* nor we will be required to arbitrate unless both parties voluntarily agree in writing to submit the matter to arbitration.

An *insured* may not recover damages under both the Uninsured Motorists Coverage and the Underinsured Motorists Coverage for the same accident.

## EXCLUSIONS

### When This Coverage Does Not Apply

1. This coverage does not apply to *bodily injury* to an *insured* if the *insured* or his legal representative has made a settlement or has been awarded a judgment of his claim without our prior written consent.

2. This coverage will not benefit any self-insurer or disability benefits insurer.

3. We do not cover the United States of America or any of its agencies as an *insured*, a third party beneficiary or otherwise.

4. We do not cover any person while *occupying* a vehicle described in the Declarations on which only Physical Damage Coverages are carried.

5. We do not cover damages for *non-economic loss* if an *insured* has elected the *Limited Tort Option* unless that *insured* sustains a serious injury as is defined by MVFRL 75 Pa. C.S. §1702.

6. Regardless of any other provision of this policy, there is no coverage for punitive or exemplary damages.

7. This coverage does not apply to the use of any vehicle by an *insured* without permission from the owner.

8. This coverage does not apply when using or *occupying* a motor vehicle furnished for the regular use of *you*, *your* spouse, or a *relative* who resides in *your* household, which is not insured under this policy.

9. This coverage does not apply to any liability assumed under any contract or agreement.

10. This coverage does not apply to damage caused by an *insured's*:
    (a) participation in or preparation for any racing, speed or demolition contest or stunting activity of any nature, whether or not prearranged or organized; or
    (b) operation or use of a motor vehicle on a track designed primarily for racing or high speed driving. This does not apply if the vehicle is being used in connection with an activity other than racing, high speed driving or any competitive driving.

11. This coverage does not apply to any person or organization while any motor vehicle is operated, maintained or used as part of personal vehicle sharing facilitated by a *personal vehicle sharing program.*

12. This coverage does not apply to *bodily injury* for any person or organization while any vehicle:
    (a) is being used to carry persons for compensation or a fee; or
    (b) is being used for *ride-sharing*.
    However, this exclusions will not apply to ordinary car pools. An ordinary car pool is one where:
    (i) An *insured* receives no payment for using a vehicle for a car pool ride; or
    (ii) An *insured* receives only reimbursement for expenses for using a vehicle for a car pool ride, the reimbursement an *insured* receives for providing the car pool ride does not exceed the reasonable cost of gas and depreciation for the distance traveled, and the reimbursement received by an *insured* is not required to be reported for income tax purposes.
    This exclusion does not apply to *you* or any *relative* while a passenger and not operating the motor vehicle.

**LIMIT OF LIABILITY**

Regardless of the number of autos or *trailers* to which this policy applies:

1. The most we will pay for damages including those for care or loss of services due to *bodily injury* to one person in any one accident is the limit shown in the Declarations for "each person" applicable to the vehicle that the *insured* was *occupying* at the time of the accident.

2. The most we will pay for all damages including those for care or loss of services, due to *bodily injury* to two or more persons in any one accident is the limit shown in the Declarations for "each accident" applicable to the vehicle that the *insureds* were *occupying* at the time of the accident.

3. When coverage is afforded to two or more autos, the limits of liability shall apply separately to each auto as stated in the Declarations but shall not exceed the highest limit of liability applicable to one auto.

   If separate policies with us are in effect for *you* or any *household member*, they may not be combined to increase the limit of our liability for a loss.

4. No *insured* may:
   (a) Receive duplicate payments for the same elements of loss; or
   (b) Recover damages from both Uninsured Motorists Coverage and the Underinsured Motorists Coverage for the same accident.

5. The amount payable under this coverage will be reduced by all amounts paid or payable by or for all persons or organizations liable for the injury.

6. Any payment made under this coverage will reduce the amount an *insured* is entitled to recover for the same damages under the Bodily Injury Coverage.

7. Our limit of liability under this Uninsured Motorist Coverage as described in 1. or 2. above shall be reduced by any amount the *insured* is entitled to recover under Section I- Liability Coverage of this policy.

**OTHER INSURANCE**

If there is other insurance applicable to a loss we have paid for, we are entitled to recover any remaining pro rata share of the benefits paid and the costs of processing the claim. Our pro rata share is the proportion our limit of liability bears to the total of all applicable limits.

Any insurance we provide for a vehicle *you* do not own is excess over any other collectible insurance, self-insurance, or bond.

**TRUST AGREEMENT**

Whenever we owe payment under this coverage:

1. We will be entitled to repayment of that amount out of any settlement or judgment after the *insured* has recovered his damages from any person or organization legally responsible for the *bodily injury.*

2. The *insured* will hold in trust for our benefit all rights of recovery which he may have against any person or organization responsible for these damages. He will do whatever is necessary to secure all rights of recovery and will do nothing after the loss to prejudice these rights.

3. At our request, the *insured*, in his own name, will take appropriate actions necessary to recover payment for damages from the legally responsible person or organization. We will be reimbursed out of the recovery for our expenses, costs and attorneys' fees if we initiate the action.

4. The *insured* will execute and furnish us with any needed documents to secure his and our rights and obligations.

**CONDITIONS**

The following conditions apply only to Uninsured Motorists Coverage:

1. NOTICE

   As soon as possible after an accident, notice must be given to us or our authorized agent stating:
   (a) The identity of the *insured*;
   (b) The time, place and details of the accident; and
   (c) The name and addresses of the injured, and of any witnesses.

   If the *insured* or his legal representative files suit before we make settlement under this coverage, he must immediately provide us with a copy of the pleadings.

Policy Number:

2. ASSISTANCE AND COOPERATION OF THE INSURED
The *insured* must take any action necessary to preserve his recovery rights against any allegedly legally responsible person or organization. We may require the *insured* to make that person or organization a defendant in any action against us.

3. ACTION AGAINST US
Suit will not lie against us unless the *insured* and his legal representative have fully complied with all the policy terms.

4. PROOF OF CLAIM-MEDICAL REPORTS
As soon as possible, the *insured* or other persons making claim must give us written proof of claim, under oath if required. This will include details of the nature and extent of injuries, treatment, and other facts which may affect the amount payable.

Proof of claim must be made on forms furnished by us unless we have not furnished these forms within 15 days after receiving notice of claim.

The *insured* will submit to examination by doctors chosen by us, at our expense, as we may reasonably require. In the event of the *insured's* incapacity or death, his legal representative must, at our request, authorize us to obtain medical reports and copies of records.

5. PAYMENT OF LOSS
Any amount due is payable:
(a) To the *insured* or his authorized representative;
(b) If the *insured* is a minor to his parent or guardian; or
(c) If the *insured* is deceased, to his surviving spouse; otherwise
(d) To a person authorized by law to receive the payment, or to a person legally entitled to recover payment for the damages.
We may at our option, pay any amount due in accordance with (d) above.


We affirm this amendment.




W. C. E. Robinson
Secretary

Todd A. Combs
President